MARTIN MASKE, Plaintiff-Appellant, v. KANE COUNTY OFFICERS ELECTORAL BOARD *et al.*, Defendants-Appellees.

Second District No. 2—92—1008

Opinion filed September 18, 1992.

Frederick J. Steffen and Kerin E. Kelly, both of Steffen & Carroll, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and Paul A. Lewis, of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora (J. Patrick Jaeger, Assistant State's Attorney, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Martin Maske, appeals the decision of the circuit court of Kane County which affirmed the decision of defendant Kane County Officers Electoral Board (Electoral Board), denying Maske's petition for nomination and certification of candidacy, thereby precluding the placement of his name on the November 3, 1992, general election ballot. For the following reasons, we affirm.

In the general primary election held on March 17, 1992, no Democratic candidate was printed on the ballot for the office of Kane County auditor; nor was any person nominated as a write-in candidate. A caucus of Democratic precinct committeemen elected Maske as the Democratic candidate for the position of Kane County auditor. On May 18, 1992, Maske filed his certificate of nomination, his statement of candidacy, and his statement of economic interests. On May 26, 1992, defendant Robert Palmer filed an objection to Maske's nomination. After hearings on May 29 and June 1, 1992, the Electoral Board struck Maske's name from the general election ballot.

Thereafter, the Democratic party again elected Maske as its candidate for the position of Kane County auditor, and Maske filed a second nominating petition. On July 14, 1992, Palmer filed an objection to Maske's nomination. The Electoral Board convened on July 21, 1992, for a hearing. On August 3, 1992, it rejected Maske's nomination. Maske sought judicial review of the Electoral Board's decision in the circuit court of Kane County, which upheld the rulings of the Board. Maske appealed the decision of the circuit court and moved for expedited consideration, which was granted.

Maske first contends that the circuit court applied the wrong standard of review in affirming the Electoral Board's decision to deny his nominating petition. In the circuit court, Maske raised issues concerning the interpretation of sections 7—61 and 10—10 of the Election Code (Ill. Rev. Stat. 1991, ch. 46, pars. 7—61, 10—10). The con-

struction of a statute is a question of law. (*Ortegel v. ITT Thorp Corp.* (1991), 210 Ill. App. 3d 669, 672.) Accordingly, the reviewing court may make an independent determination and need not defer to the decision of the trial court. (*Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 993.) However, because agencies make informed judgments based on their experience and expertise with similar issues, it is generally recognized that courts give substantial weight and deference to the interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *Monahan*, 210 Ill. App. 3d at 994, citing *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53.

In the circuit court, Maske raised the issue of whether Palmer had standing to object to his nomination. In its memorandum opinion, the circuit court wrote that "[t]he Board found Mr. Palmer to be a qualified registered voter of Kane County and accordingly this court finds by the manifest weight of the evidence that the Board's ruling in this regard was correct." On appeal, Maske contends that this language indicates that the court applied the wrong standard of review in its entire ruling.

■ Our review of the circuit court's memorandum opinion fails to indicate that the wrong standard of review was applied to the issues Maske raises in this appeal. The trial court did utilize the manifest weight language Maske quotes. However, it did so in rendering its ruling on Palmer's standing to challenge Maske's nomination, an issue not raised in this appeal. Nevertheless, assuming *arguendo* the wrong standard was applied, such error was harmless. As we previously stated, a reviewing court may consider the construction of a statute, a question of law, independent of the trial court's judgment, giving deference to the interpretation given by the agency charged with the administration of the statute. Since we will review the trial court's decision *de novo*, an error which may have occurred by applying the incorrect standard of review will have no impact on our decision in this appeal.

Next, Maske contends that the trial court erred in affirming the Electoral Board's decision to deny his nominating petition on the basis that it was not timely filed. Maske actually filed two nominating petitions which were both denied by the Electoral Board. After the Board denied Maske's first petition, the Democratic party again elected him as its candidate for the position of Kane County auditor, and Maske filed a second nominating petition. After hearings on Palmer's second objection, the Electoral Board rejected Maske's second nomination as untimely. At this time, Maske sought judicial re-

view of the Board's decision in the circuit court of Kane County, which affirmed the decision of the Board.

■ Section 7—61 of the Election Code sets forth a comprehensive statutory scheme for filling vacancies in nomination. It contains the following language:

> "If the name of no established political party candidate was printed on the *consolidated primary* ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this Section. If the name of no established political party candidate was printed on the *general primary* ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created, but no candidate of the party for the office shall be listed on the ballot at the general election unless such vacancy is filled in accordance with the requirements of this Section within 60 days after the date of the general primary." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 46, par. 7—61.)

The election held in the State of Illinois on March 17, 1992, is properly termed a general primary election as defined by section 2A—1.1(a) of the Election Code. (Ill. Rev. Stat. 1991, ch. 46, par. 2A—1.1.) According to the terms of section 7—61 quoted above, Maske was required to fill the vacancy within 60 days after the March 17, 1992, general primary when a Democratic candidate neither ran for the office of Kane County auditor nor was one nominated as a write-in. Since the vacancy was not filled within this time frame, both the Electoral Board and the circuit court found Maske's second nominating petition, filed on July 8, 1992, to be untimely.

Maske, however, cites the following language of the Election Code:

> "A vacancy in nomination occurs when a candidate who has been nominated under the provisions of this Article 7 dies before the election *** or declines the nomination; provided that nominations may become vacant for other reasons." (Ill. Rev. Stat. 1991, ch. 46, par. 7—61.)

He also cites the following time limits for filling vacancies:

> "Any vacancy in nomination under the provisions of this Article 7 occurring on or after the primary and prior to certification of candidates by the certifying board or officer, must be filled prior to the date of certification." (Ill. Rev. Stat. 1991, ch. 46, par. 7—61.)

Based on the foregoing, Maske contends that a vacancy for the office of Kane County auditor was created on July 2, 1992, when the Electoral Board sustained Palmer's objection and denied his first nominating petition. Because the candidates for the office had not been certified at this time, Maske contends that the language of section 7—61 quoted above allows him to make a second attempt to fill such vacancy in a timely manner at any time prior to certification. We disagree.

In *McCarthy v. Streit* (1989), 182 Ill. App. 3d 1026, a slate of Republican candidates was denied a place on the ballot in a township election. The same candidates then formed a new political party, The Township Choice Party. The trial court found that the parties had participated in an established political party's caucus and were statutorily precluded from third-party candidacy. At issue on appeal was whether the vacancies that occurred on the Republican slate when the first certificate of nomination was declared invalid could be filled by resolution with the same candidates who had been previously stricken. The court ruled that the vacancies created by the electoral board's decision to deny the first slate of improperly nominated candidates could be legally filled by the same candidates. *McCarthy*, 182 Ill. App. 3d at 1033.

*McCarthy*, however, is factually distinguishable from the present case. In *McCarthy*, the candidates were found ineligible by the election board but were allowed to *reorganize under a new party name* and be declared eligible to fill the vacancy created by the board's denial of their first nomination. However, in the present case, Maske's first nomination as the Democratic party candidate was denied. Contrary to the candidates in *McCarthy*, Maske did not reorganize under a new party name and file a second petition. Instead, he filed a second petition under the same party. Furthermore, *McCarthy* deals with a township election which did not involve a general primary election and did not construe the 60-day requirement of section 7—61.

To accept Maske's argument that he was able to fill a "vacancy" created when the Board denied his first petition at any time prior to certification would render the 60-day requirement of section 7—61 a nullity. However, a statute should not be construed so that its specific language is rendered meaningless or superfluous. (*People v. Singleton* (1984), 103 Ill. 2d 339, 345.) The basic rule in ascertaining the meaning of a statute is to determine the intent of the legislature and effectuate such intent. (*Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 368.) This is accomplished by examining the terminology of the statute, its goals and purposes, the natural import of

the words used in common and accepted usage, the setting in which they are employed, and the general structure of the statute as a whole. (*Monahan,* 210 Ill. App. 3d at 993.) Where the language of the statute is certain and unambiguous, the court's only function is to enforce the law as enacted by the legislature, without resorting to supplemental principles of statutory construction. *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533, 541; *Village of South Elgin,* 203 Ill. App. 3d at 368.

Contrary to Maske's assertion, we find that a vacancy did not occur when the Electoral Board denied his second nominating petition as untimely. According to the express and unambiguous terms of section 7—61 of the Election Code, a vacancy occurred when no Democratic candidate ran for the office of Kane County auditor and no candidate was nominated as a write-in which required such vacancy to be filled within 60 days of the general primary election, in this case, within 60 days of March 17, 1992. Maske attempted to comply with this statute by filing his first nominating petition. His petition, however, was denied. Maske cannot attempt to circumvent the clear and unambiguous language and time limits set forth in section 7—61 by filing successive nominating petitions under the same party which had been previously denied. If Maske did not agree with the Board's first decision denying his petition, the recourse Maske should have sought was judicial review of that order. For these reasons, we find that Maske's second nominating petition was properly dismissed as untimely.

■ Last, Maske contends that the Electoral Board's decision to deny his nominating petition is a nullity because it failed to meet within the time specified in the Election Code. Section 10—10 of the Election Code describes the procedures to be followed by the board of elections when an objection to a nominating petition is filed. (Ill. Rev. Stat. 1991, ch. 46, par. 10—10.) It states in pertinent portion as follows:

> "The day of the meeting [hearing objections to nominating petitions] *shall* not be less than 3 nor more than 5 days after the receipt of the certificate of nomination or nomination papers and the objector's petition by the chairman of the electoral board." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 46, par. 10—10.)

The Election Code specifies the computation of time limits as follows:

> "The time within which any act provided by The Election Code is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sun-

day or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded." Ill. Rev. Stat. 1991, ch. 46, par. 1—5.

It is undisputed that Palmer filed his objection to Maske's petition on July 14, 1992, a Tuesday. The latest possible date the Electoral Board could meet within the framework of section 10—10 was five days after Palmer's objection was filed. In this case, the latest date would have been Monday, July 20, 1992, because the fifth day was a Sunday and was excluded pursuant to section 1—5. It is further uncontroverted that the Electoral Board met to hear Palmer's objection on Tuesday, July 21, 1992, more than five days after the receipt of Palmer's objection. Maske contends that the Electoral Board lost jurisdiction to hear Palmer's objection by failing to convene within the time specified by section 10—10, thereby nullifying its decision to strike his name from the general election ballot.

As an administrative agency created by statute, the Electoral Board may only exercise the powers conferred upon it by the legislature. (*Kozel v. State Board of Elections* (1988), 126 Ill. 2d 58, 68; *Sullivan v. County Officers Electoral Board* (1992), 225 Ill. App. 3d 691, 694.) However, it does not necessarily follow that failing to convene within the specified time limit divests the Board of jurisdiction to conduct a statutorily authorized activity. If this were true, the objection process set forth by the legislature would be thwarted. By ignoring the statutorily authorized procedure and ordering a hearing on an objection outside the time limits set by the legislature, the Board could prevent any hearing on the objection. This would lead to the absurd result that the nomination would be placed in limbo and the candidate could proceed no further.

In *Craig v. Electoral Board* (1991), 207 Ill. App. 3d 1042, the electoral board convened to hear an objector's petition two days beyond the time limit set forth in section 10—10. Because the candidate did not contest that he had notice of the hearing and did not deny that subpoenas were issued and witnesses were available at the hearing, the court deemed the issue waived absent a showing of how the candidate incurred prejudice by the delay. It is fundamental that issues of jurisdiction can be raised at any time and cannot be waived by either party. (*In re Marriage of Bussey* (1984), 128 Ill. App. 3d 730, 731, *aff'd* (1985), 108 Ill. 2d 286.) Although not directly on point, *Craig* stands for the proposition that the time limits set forth in section 10—10 of the Election Code are not jurisdictional, since the court deemed the issue waived. *Craig*, 207 Ill. App. 3d at 1048.

Thus, the issue at hand is more appropriately framed as whether the Board's actions were void because of its failure to convene within the statutory time limitations. Section 10—10 specifically states that the day of the hearing on an objector's petition *"shall* not be less than 3 nor more than 5 days after the receipt of the certificate of nomination or nomination papers and the objector's petition by the chairman of the electoral board." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 46, par. 10—10.) Although the word "shall" is generally regarded as mandatory (see *People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272, 276), the term does not have a fixed or inflexible meaning and may be given a permissive meaning depending on the legislative intent. (*Singleton,* 103 Ill. 2d at 342; *Larson,* 88 Ill. App. 3d at 276.) A provision in a statute is mandatory when the failure to follow such provision renders the proceeding to which it relates illegal and void. In contrast, failing to observe a directory provision has no effect on the validity of the proceeding. (*Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 903.) When a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends upon its purpose. (*Shipley,* 130 Ill. App. 3d at 902-03.) As succinctly stated by the appellate court:

"If the provision merely directs a manner of conduct for the guidance of the officials or is designed to secure order, system and dispatch in proceedings, it is generally directory, absent negative language denying the performance if the acts required are not done in the manner designated. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act in the manner specified, the statute is mandatory." *Shipley,* 130 Ill. App. 3d at 903.

Stated another way, a mandatory statute will describe the consequences for failing to follow its provisions. (See *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 566.) For example, section 2 of article 13 of the 1970 Constitution mandates that "Failure to file a statement within the time prescribed shall result in ineligibility for, or forfeiture of, office." (Ill. Const. 1970, art. XIII, §2.) Section 10—4 of the Election Code states that "No signature shall be valid or be counted in considering the validity or sufficiency of [a nomination] petition unless the requirements of this Section are complied with." (Ill. Rev. Stat. 1991, ch. 46, par. 10—4.) In contrast, however, section 10—10 of the Election Code specifies the time during which a hearing on an objec-

tor's petition must be held but fails to indicate what will occur when this procedure is not followed.

Furthermore, our supreme court has held that, in construing statutory provisions regulating elections, requirements as to which the legislature has not clearly indicated a contrary intention will be held directory, rather than mandatory, especially where such requirements do not contribute substantially to the integrity of the election process. (*Craig v. Peterson* (1968), 39 Ill. 2d 191, 196; see also *Troutman v. Keys* (1987), 156 Ill. App. 3d 247, 251.) Time limits have been considered directory where the rights of the parties are not injuriously affected by the failure to act within the time specified. (See *Springfield-Sangamon County Regional Plan Comm'n v. Fair Employment Practices Comm'n* (1978), 71 Ill. 2d 61, 68.) In other circumstances, the court has allowed substantial compliance with the technical requirements of election laws in the absence of express statutory language. See *Craig*, 207 Ill. App. 3d at 1046-47; *Shipley*, 130 Ill. App. 3d at 903-07; *Havens*, 102 Ill. App. 3d at 565.

A candidate's rights may be adversely affected when the Electoral Board schedules its hearing well outside the time limits or fails to convene at all. In this case, the Electoral Board convened one day after the time limit set forth in section 10—10. However, Maske has not indicated what prejudice occurred by the delay, if any. Although we do not condone the Board's actions and emphasize that the Electoral Board is under a duty to comply with the provisions of the Election Code, we find that failing to convene in the designated time frame was not a fatal flaw. Because section 10—10 fails to indicate the consequence for failing to follow its time limits, the Board could theoretically thwart the entire election process by scheduling its hearings outside the time frame. However, we simply do not believe that the legislature intended for such a defect to have the result of nullifying the Board's authority. Accordingly, we hold that the failure to meet within the time frame specified in section 10—10 did not nullify the Board's actions in ordering Maske's name off the general election ballot.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and BOWMAN, JJ., concur.