HARVEY FERGUSON *et al.*, Petitioners-Objectors and Appellants, v. LAWRENCE RYAN *et al.*, Respondent-Candidates and Appellees (Patricia O'Hara *et al.*, Respondents-Appellees; Clara Hartley Woodward, Will County Clerk, Respondent).

Third District   No. 3—93—0247

Opinion filed November 19, 1993.

Robert L. Tucker, of Robert L. Tucker & Associates, and William J. Harte, of William J. Harte, Ltd., both of Chicago (Courtney C. Nottage, of counsel), for appellants.

Block, Krockey, Cernugel & Cowgill, P.C., of Joliet (Joseph M. Cernugel, of counsel), for appellees Lawrence Ryan, Stanley Waznis, Ann DeMattie, Nicholas Tomac, Jeffrey Wallace, Robert Wisniewski, Rudolph Pucel, Ronald Mrozek, and John Allen.

Franklin Burkey, of Joliet, for other appellees.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

Petitioners, Harvey Ferguson, Warren Dorris, Marvin French, David Gorman, Franklin Stewart, Humberto Rodriguez, John Grabavoy, Robert Torres, Ezra Henderson, Jr., and Edward Kluge, appeal from an order of the circuit court of Will County which affirmed the decision of the Joliet Township Electoral Board (Electoral Board). The Electoral Board had denied petitioners' objections to a township caucus held January 12, 1993.

Both the trial court and the Electoral Board found the procedures followed at the township caucus were adequate under the applicable statutes. The trial court also found the Electoral Board's choice of counsel did not prejudice the outcome of the proceedings. On appeal, petitioners argue that both of these findings were against the manifest weight of the evidence. Petitioners also argue they were deprived of their constitutional guarantee to a free and equal election. We find no error in the trial court's rulings and also find that petitioners were not deprived of their constitutional rights. Therefore, we affirm.

On January 12, 1993, a caucus was held in Joliet Township for the purpose of selecting a slate of candidates from the Democratic Party to run for the township offices of supervisor, clerk, highway commissioner, assessor, collector and trustee. The caucus was held at the St. George Serbian Hall (Hall) and was scheduled to begin at 6:30 p.m. However, a large number of people entered the Hall around 5:30 p.m. Because so many people entered the Hall early, affidavits were not signed at the door but were passed around inside the Hall. The affidavits clearly stated on the front:

"I hereby certify I am a registered voter in [Joliet Township] and that I am affiliated with the [Democratic Party], and I am not prohibited from signing this affidavit by any of the reasons listed on the reverse side of this affidavit; nor will I become an independent candidate or a new political party candidate at the upcoming election."

Also, the following language was clearly printed on the back of the affidavits:

"No participant shall be able to participate or to vote at any township or multi-township caucus if such person is or was at any time during the twelve months prior to the caucus:

1. an elected or appointed public official of another established political party;

2. an elected or appointed officer, director, precinct committeeman or representative of the township committeeman of another established political party;

3. a judge of election pursuant to Article 13 or 14 of The Election Code for another established political party;

4. a voter who voted in the primary election of another established political party."

There were a total of 616 signatures on the affidavits.

Prior to the caucus, the Joliet Township Democratic Organization (central committee) had not voted on rules for the caucus or on caucus judges. At the caucus, the caucus chairman, Nicholas Tomac, read proposed rules to the voters present. Also, three judges were chosen by Tomac, and three judges were submitted by petitioner Ferguson. The caucus rules and the six judges were voted on and approved by those present at the caucus. Two slates of candidates were then nominated for the various township offices that would be elected on April 20, 1993. The two slates were the "Ryan" slate and the "Gorman" slate.

It was decided that the vote on the slates would be taken by means of a division of the house. Accordingly, voters favoring the Ryan slate assembled on one side of the room and voters favoring the Gorman slate assembled on the opposite side of the room. Two judges counted the Ryan slate voters while another two judges counted the Gorman slate voters. Each pair of judges included one chosen by Tomac and one submitted by Ferguson. The two judges counting the Gorman slate voters each agreed on a total count of 211. One of the judges counting the Ryan slate voters counted 360 while the other judge counted 421. Tomac accepted the lower count for the Ryan slate. Tomac declared the Ryan slate the winner.

On February 1, 1993, nomination papers were filed by the Ryan slate candidates, Lawrence Ryan, Stanley Waznis, Ann DeMattie, Nicholas Tomac, Jeffrey Wallace, Robert Wisniewski, Rudolph Pucel, Ronald Mrozek and John Allen. Petitioners, including most of the Gorman slate candidates and several others, filed their objections on February 11, 1993.

On February 16, 1993, the circuit court of Will County entered an order appointing Patricia O'Hara, Bob Egan and Jeannie Rohder to be members of the Electoral Board. The court stated in the order that it had been advised that no sitting member of the Electoral Board was eligible to rule on the objections. Just prior to the

hearing on the objections, petitioners filed a motion requesting the Electoral Board obtain new counsel. Petitioners contended that a conflict of interest existed because the Electoral Board's counsel had previously represented respondent Tomac during the caucus. The petitioners' motion was denied.

The hearing before the Electoral Board was held on February 22, 23 and 24, 1993. Several witnesses testified that it was apparent following the division of the house that a clear majority of the voters favored the Ryan slate candidates. On February 25, 1993, the Electoral Board issued its decision. The Electoral Board determined the petition was insufficient as a matter of law. It found that none of the procedural violations alleged by petitioners altered the declared result of the caucus. Accordingly, the Electoral Board denied petitioners' objections.

On March 8, 1993, petitioners filed a petition for judicial review. The trial court affirmed the decision of the Electoral Board. The court found as follows:

"1) the process of the Caucus, as a whole, functioned fairly and honestly and that the nominations represented accurately the decision of the caucus;

2) that the Electoral Board's choice of counsel did not prejudice the outcome; and

3) that the Decision of the Electoral board is not against the manifest weight of the evidence."

This timely appeal followed.

Petitioners claim their objections should have been sustained by the trial court because the procedures set out in sections 6A—1 and 6A—1.1 of the Township Law of 1874 (Township Act) (60 ILCS 5/ 6A—1, 6A—1.1 (West 1992)) were not followed at the Joliet Township caucus. Petitioners contend the Township Act was violated because: (1) there was no verification system in place to determine, prior to their entry into the caucus, whether the participants were qualified to participate; (2) the central committee did not promulgate and adopt the caucus rules, including the method of voting at the caucus; (3) the central committee did not appoint the caucus judges; (4) the participants did not determine the duties of the caucus judges; and (5) the central committee did not declare the result of the caucus.

Petitioners, however, do not argue: (1) that there actually were voters who participated in the caucus who were not qualified to participate; (2) that the rules approved by the caucus participants were unfair or incomplete; (3) that the six judges approved by the

caucus participants were not fair and impartial; (4) that there was any question or confusion regarding the duties of the caucus judges; or (5) that the declaration of the Ryan slate as the winner of the caucus was not based upon the actual vote of the participants.

Petitioners do *not* claim that the outcome of the caucus would have been any different if the violations complained of had not occurred. Instead, petitioners contend the statute's requirements are mandatory. As a result, petitioners argue that any failure to follow the requirements of the statute, no matter how small or inconsequential, affects the validity of the caucus results. We disagree with petitioners' analysis of the law.

■ The general purpose of election laws is "to obtain fair and honest elections" (*Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 66, 561 N.E.2d 585, 605) and "to obtain a correct expression of the intent of the voters" (*Pullen*, 138 Ill. 2d at 79, 561 N.E.2d at 611). This purpose " 'is paramount in importance to the formal steps prescribed as a means to its achievement.' " (*Pullen*, 138 Ill. 2d at 66, 561 N.E.2d at 605, quoting *Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233* (1958), 14 Ill. 2d 40, 44, 150 N.E.2d 583.) Therefore, a court, under the appearance of enforcing election laws, should not defeat the very object those laws were intended to achieve. *Pullen*, 138 Ill. 2d at 80, 561 N.E.2d at 611.

Based upon this general principle, we find that the purpose of election laws is promoted by upholding the clear intent of the voters who participated at the caucus. Consequently, we conclude that the minor and technical violations of the statute petitioners complain of did not affect the overall fairness of the caucus and in no way prejudiced the outcome.

■ Moreover, we find absolutely meritless petitioners' argument that the statutes in question are mandatory. Petitioners point out that the cited sections of the Township Act use the word "shall." They argue that every requirement stated in the sections is therefore mandatory and must be followed in order for the results of a township caucus to be valid. The law does not support petitioners' conclusions.

It is true that, as a general rule, the word "shall" is regarded as mandatory. (*Maske v. Kane County Officers Electoral Board* (1992), 234 Ill. App. 3d 508, 515, 600 N.E.2d 513, 518-19.) However, "the term does not have a fixed or inflexible meaning and may be given a permissive meaning depending on the legislative intent." (*Maske*, 234 Ill. App. 3d at 515, 600 N.E.2d at 519.) If the

statute in question "simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as directory." (*Pullen*, 138 Ill. 2d at 65, 561 N.E.2d at 604.) Accordingly, unless the statute specifically describes the consequences for failing to follow its provisions, it is *not* mandatory. See *Pullen*, 138 Ill. 2d at 65, 561 N.E.2d at 604; *Maske*, 234 Ill. App. 3d at 515, 600 N.E.2d at 519.

Sections 6A–1 and 6A–1.1 of the Township Act set out detailed procedures for conducting a township caucus. However, neither section of the statute states that compliance with these procedures is essential for the validity of the caucus. Also, neither section of the statute describes any consequences for failing to follow its provisions. Therefore, we find that the statutes are clearly directory.

While directory provisions may not be disregarded, it does not follow that every departure or omission will vitiate the proceeding. (*Ballentine v. Bardwell* (1985), 132 Ill. App. 3d 1033, 1040, 478 N.E.2d 500, 505.) Consequently, the failure to strictly comply with directory provisions is not fatal in the absence of fraud or a showing that the merits of the election were affected. *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 39, 219 N.E.2d 617; *In re Petition to Form the South Prairie Park District* (1992), 224 Ill. App. 3d 614, 617, 587 N.E.2d 14, 16.

Here, petitioners have only argued violations of directory statutes. They have not shown that any of the violations were caused by fraud or affected the outcome of the caucus. Based on the law under these circumstances, it is clear that petitioners have no valid objection to the results of the caucus.

■ Additionally, we note that the procedures used at the caucus to verify the eligibility of participants actually complied with section 6A–1.1 of the Township Act (60 ILCS 5/6A–1.1 (West 1992)). The statute sets out the eligibility requirements for participation in the caucus. Here, the voters were required to sign affidavits stating that they were eligible to participate. The affidavits specifically stated the statutory eligibility requirements. We find this was sufficient compliance with the statute's requirements. Contrary to petitioners' assertions, the statute does *not* require verification of the participants' eligibility prior to their entry into the caucus room.

Section 10–10 of the Election Code provides that, after timely objections are filed, the Electoral Board's role is to determine: (1) whether the nomination papers or petitions are in proper form; (2)

whether they were timely filed; (3) whether they are genuine; and (4) whether they represent "accurately the decision of the caucus or convention." (10 ILCS 5/10—10 (West 1992).) As an administrative agency created by statute, the Electoral Board may only exercise the powers conferred upon it by the legislature. (*Kozel v. State Board of Elections* (1988), 126 Ill. 2d 58, 68, 533 N.E.2d 796, 801; *Sullivan v. County Officers Electoral Board* (1992), 225 Ill. App. 3d 691, 694, 588 N.E.2d 475, 477.) We conclude that petitioners' objections had nothing to do with the form of the nomination papers, their timeliness, whether they were genuine or whether they accurately represented the decision of the caucus. (See *Sullivan*, 225 Ill. App. 3d at 694, 588 N.E.2d at 477.) Therefore, we agree with the Electoral Board's finding that petitioners' petition was insufficient as a matter of law.

■ Petitioners next contend that the trial court erred in finding the Electoral Board's choice of counsel did not prejudice the outcome of the proceedings. During the hearing, Franklin Burkey represented the Electoral Board. Burkey was Joliet Township's attorney and advised Tomac during the caucus. Petitioners note that the Electoral Board had the duty to determine the validity of the nomination papers of respondents, including Tomac. Therefore, petitioners argue that, because Burkey had advised Tomac during the caucus, Burkey had a conflict of interest in advising the Electoral Board. Petitioners did not cite any applicable authority to the trial court in support of this argument. Also, petitioners have failed to cite any relevant case law in their appellate briefs. Moreover, we have found no authority which supports petitioners' argument.

We recognize that it is well settled that a party appearing before an administrative tribunal has the right to be judged by an unbiased decision maker. (*Ryan v. Landek* (1987), 159 Ill. App. 3d 10, 12, 512 N.E.2d 1, 2.) Here, the Electoral Board was the decision maker. The three members of the Electoral Board were appointed by the court for purposes of rendering a fair and unbiased decision. Petitioners do not contend that any member of the Electoral Board was biased in any way. As a result, we conclude the Electoral Board's ruling on petitioners' objections was made by a fair and unbiased decision maker. Because the decision maker was fair and unbiased, we conclude that petitioners' complaint regarding Burkey is without merit. Accordingly, we find no error in the trial court's resolution of this issue.

■ Petitioners also argue they were denied their constitutional right to a free and equal election. This argument is based upon the

same violations of the Township Act previously asserted by petitioners. As we have already concluded that these technical violations did not affect the fairness of the caucus or the result of the caucus, we find petitioners' argument without merit.

For the reasons indicated, we affirm the judgment of the circuit court of Will County.

Affirmed.

STOUDER and SLATER, JJ., concur.