THE DU PAGE COUNTY ELECTION COMMISSION, Plaintiff-Appellee, v. THE STATE BOARD OF ELECTIONS *et al.*, Defendants-Appellants.

Second District   No. 2—02—1163

Opinion filed December 11, 2003.

Lisa Madigan, Attorney General, of Chicago (Mary E. Welsh and Carl J. Elitz, Assistant Attorneys General, of counsel), for appellants.

Evelyn R. Pacino, Mary E. Dickson, and Patrick K. Bond, all of Bond, Dickson & Associates, P.C., of Wheaton, for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Defendants, the State Board of Elections (the Board) and its members in their official capacity, appeal from the order of the circuit court granting declaratory judgment in favor of plaintiff, the Du Page County Election Commission. We reverse.

## I. BACKGROUND

On January 17, 2002, defendants, in accordance with section 7—14 of the Illinois Election Code (Election Code) (10 ILCS 5/7—14 (West 2002)), certified the candidates for the March 19, 2002, general primary election ballot. The Election Code provides, in relevant part:

"Not less than 61 days before the date of the general primary the State Board of Elections shall meet and shall examine all petitions filled under this Article 7, in the office of the State Board of Elections. The State Board of Elections shall then certify to the county clerk of each county, the names of all candidates whose nomination papers or certificates of nomination have been filed with the Board and direct the county clerk to place upon the official ballot for the general primary election the names of such candidates in the same manner and in the same order as shown upon the certification." 10 ILCS 5/7—14 (West 2002).

The Election Code also provides for the same deadline with respect to when local election authorities must certify candidates for consolidated primaries. 10 ILCS 5/7—13.1 (West 2002). On January 30, 2002, Michael Bakalis, a democratic party candidate for governor listed on the January 17, 2002, certification, personally delivered a letter to the permanent branch office of the State Board of Elections indicating his desire to withdraw as a candidate for the democratic nomination for governor and requesting that his name not appear on the ballot. Defendants accepted Mr. Bakalis's withdrawal and issued an amended certification on February 1, 2002, omitting Mr. Bakalis's name.

■ On February 1, 2002, plaintiff sent a letter to defendants indicating that it refused to accept the amended certification because it felt that the withdrawal was untimely under section 7—12(9) of the Election Code (10 ILCS 5/7—12(9) (West 2002)), that it had no authority or obligation to accept defendants' amended certification, and that it would "not alter the ballot which *** [had] already been sent to print [on January 30, 2002,] containing the name of Michael Bakalis." Section 7—12(9) of the Election Code states, in relevant part:

"Any person for whom a petition for nomination, or for committeeman or for delegate or alternate delegate to a national nominating convention has been filed may cause his name to be withdrawn by request in writing, signed by him and duly acknowledged before an officer qualified to take acknowledgments of deeds, and filed in the principal or permanent branch office of the State Board of Elections or with the appropriate election authority or local election official, not later than the date of certification of candidates for the consolidated primary or general primary ballot. No names so withdrawn shall be certified or printed on the primary ballot." 10 ILCS 5/7—12(9) (West 2002).

Since the date for certification had passed before Mr. Bakalis attempted to withdraw, plaintiff argued that his attempted withdrawal was untimely. Defendants responded that they believed that they had the authority to allow "permissive withdrawals."

■ On February 13, 2002, plaintiff filed a verified complaint for

declaratory judgment against defendants. The complaint sought, *inter alia*, a declaration that section 7—12(9) establishes an absolute deadline by which a candidate may withdraw from an election, that there is no right of permissive withdrawal under the Election Code, and that plaintiff had no authority or obligation to change the ballot to conform with defendants' amended certification. Defendants asserted that they had the authority to accept Mr. Bakalis's withdrawal and to amend the certification pursuant to section 7—14, which states, in relevant part:

> "The State Board of Elections or the county clerk, as the case may be, shall issue an amended certification whenever it is discovered that the original certification is in error." 10 ILCS 5/7—14 (West 2002).

According to defendants, the inclusion of the name of a candidate who has withdrawn, even after certification pursuant to section 7—14, causes a certification to be "in error" and, therefore, defendants have discretion to amend the certification under section 7—14.

Plaintiff filed a motion for an expedited briefing schedule in order to allow the parties to file "respective Motions for Summary Judgment" and so that the case could be decided before the election. However, on February 27, 2002, the court entered an agreed order which supplied a briefing schedule that ran beyond the election date. Consequently, while the case was pending, the general primary election took place as scheduled on March 19, 2002. As a result of plaintiff's refusal to abide by defendants' amended certification, the Du Page County ballot listed Michael Bakalis as a candidate for the democratic nomination for governor. From the votes cast in Du Page County, Mr. Bakalis was not the winner of the democratic nomination for governor. On September 23, 2002, in disposing of the matter, the trial court entered an order stating the following:

> "(1) [T]he withdrawal provision of the [E]lection [C]ode, 10 ILCS 5/7—12(9), provides an absolute deadline for a candidate to file a petition for withdrawal from an election; and (2) there is no right of permissive withdrawal under the Election Code for a candidate after the date of certification set forth in the Election Code 10 ILCS 5/7—13.1 and 10 ILCS 5/7—14; and (3) an 'error' as defined in the Election Code means a mistake and that a candidate's withdrawal after the date for certification does not constitute an 'error'; and (4) nothing herein is intended to otherwise restrict the State Board's authority under the Election Code to amend certifications."

Defendants filed a timely appeal from the circuit court's order.

## II. DISCUSSION

### A. Jurisdiction/Mootness

■ As a preliminary matter, we must determine whether the issues in this case became moot after the general primary election was held, since the circuit court's order was entered after the election. A case is moot when there exists no present controversy; that is, when a decision would have no practical effect on the existing controversy. *LaSalle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 43 (1998). An issue can become moot when it is pending on appeal. *In re Estate of Wellman*, 174 Ill. 2d 335, 353 (1996). If an issue is moot, the court lacks jurisdiction to resolve the claim. *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 448 (1995).

■ Plaintiff is seeking a declaratory judgment regarding defendants' ability to require it to comply with the amended certification issued on February 1, 2002, and remove Mr. Bakalis's name from the ballot. The purpose of a declaratory judgment action is to fix the rights of the parties before there has been an irrevocable change of position. *Rockford Title Co. v. Staaf*, 275 Ill. App. 3d 476, 480 (1995). However, after the March 19, 2002, general primary election was held, a court could no longer fix the rights of the parties, as the election removed the controversy. Consequently, the issues were, and continue to be, moot.

■ However, defendants contend, and plaintiff does not dispute, that the substantial public interest exception to the mootness doctrine is applicable in this case. Nevertheless, jurisdiction is fundamental to a court's ability to render a decision, and we must consider jurisdiction even if the parties agree it is present. *Department of Public Aid ex rel. K.W. v. Lekberg*, 295 Ill. App. 3d 1067, 1069 (1998). Since the doctrine of mootness is jurisdictional in nature (*Midwest Central Education Ass'n*, 277 Ill. App. 3d at 448), we must consider mootness despite the fact that plaintiff does not dispute jurisdiction.

■ The substantial public interest exception to mootness provides that a moot issue can be considered by the court if (1) the question is of a substantial public nature; (2) there is a need for an authoritative decision to provide future guidance; and (3) the situation is likely to recur. *In re J.B.*, 204 Ill. 2d 382, 387 (2003). Illinois courts construe the public interest exception very narrowly and require that each criterion be met. *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1028 (1994). This exception is applicable only when there is an extraordinary degree of public concern and the public interest is very clear. *Sharma*, 265 Ill. App. 3d at 1028.

■ This case involves the construction of several sections of the Election Code. The outcome of this case will affect the ability of candidates to remove their names from the ballot after certification, defendants' power to issue amended certifications reflecting such removals, and, potentially, the choices Illinois voters will be able to make during general primary elections. The procedures for certifying candidates for election to public office are a matter of substantial public interest. *North v. Hinkle*, 295 Ill. App. 3d 84, 86 (1998). Moreover, the right to vote is fundamental (*Puffer-Hefty School District No. 69 v. Du Page Regional Board of School Trustees*, 339 Ill. App. 3d 194, 202 (2003)) and our decision will potentially impact voting rights of the citizens of Illinois. Consequently, we find that there is a question of a substantial public nature. Furthermore, there is a need for an authoritative decision to provide future guidance; disagreement over the meaning of the statutes at issue could lead to different ballots in different counties, as occurred in this case, because some counties may not believe that defendants have the authority to issue amended certifications reflecting postcertification withdrawals. Finally, as the parties have noted, this dispute has occurred before and there is no reason not to expect that candidates in the future will withdraw from an election and attempt to remove their names from the ballot after the time for certification has passed; therefore, we find that this situation is likely to recur.

Consequently, although we find the issues before us to be moot, the substantial public interest exception is applicable and we have jurisdiction to hear this appeal.

## B. The Election Code

■ Statutory construction is a question of law and, as such, we review a trial court's statutory interpretation *de novo*. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45 (2002). Generally, the best indicator of legislative intent is the plain language of the statute. *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 591 (2002). Furthermore, we must construe the meaning of a statute so that it is consistent with other statutes addressing the same subject. *MQ Construction Co. v. Intercargo Insurance Co.*, 318 Ill. App. 3d 673, 681 (2000). A statute should not be construed so that it is rendered superfluous or meaningless. *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 366 (1997).

Initially we note that, although the parties discuss this case in the

context of the ability of a candidate to "withdraw," a candidate who no longer wishes to be a candidate cannot be forced to take office and, therefore, can always withdraw from the election process. Therefore, this case concerns the removal of a candidate's name from the ballot and not the ability of a candidate to withdraw. Consequently, the core issue before this court is whether defendants have the authority under the Election Code to issue an amended certification reflecting the withdrawal of a candidate after certification pursuant to section 7—14 has occurred. Defendants claim that this authority derives from section 7—14, which gives them discretion to issue an amended certification when the original certification is "in error." Defendants contend that including a candidate who has withdrawn in a certification would cause the certification to be "in error," and, therefore, that section 7—14 gives them discretion to remove a candidate from the ballot after the deadline set forth in section 7—12(9) and to issue an amended certification omitting the candidate's name.

### 1. Time Frame for Issuing Amended Certifications and the Board's Discretion

Initially, we must discuss the time frame during which an amended certification may be issued because, even if we hold that Mr. Bakalis's withdrawal constitutes "error" pursuant to section 7—14, defendants would be powerless to issue an amended certification if the time to do so had elapsed. Defendants assert that, because the statute allows them to amend a certification "whenever it is discovered" that it is "in error," they may issue amended certifications at any time, even after the time for certification under section 7—12(9) has passed. We agree. The plain language of section 7—14, that is, "whenever it is discovered," indicates that there are no strict time limits that control when defendants may issue amended certifications.

Even though we have held that there are no time constraints with regard to when defendants may exercise their section 7—14 amendment powers, it is helpful to consider whether the amendment provision of section 7—14 is directory or mandatory in nature. In those situations where an "error" is determined to exist, a provision that is mandatory would eliminate defendants' discretion while a directory provision would endow defendants with discretionary authority to amend certifications. In this case, the plain statutory language, "shall issue an amended certification," indicates that the issuance of an amended certification is mandatory. However, when a statute purportedly requires a public official or body to act, such as in this case, the determination of whether the act is mandatory or directory depends upon the statute's purpose. *Maske v. Kane County Officers Electoral*

*Board*, 234 Ill. App. 3d 508, 515 (1992). As we discuss below, with respect to the issuance of an original certification, the Election Code sets strict time limits in certain circumstances regardless of the impact that these time limits may have on accuracy. This leads us to believe that accuracy is not the sole concern of the Election Code. We find that, in light of the overall structure of the Election Code, the purpose of the amendment provision of section 7—14 is to allow defendants to issue amended certifications so that voters have accurate ballots when they go to vote on election day as long as the accuracy of the ballots does not give way to other concerns, such as uniformity, if certain counties would be unable to comply, and cost. Defendants would necessarily have discretion to take these concerns into account.

Furthermore, a court should avoid statutory interpretations that lead to absurd results. *In re D.D.*, 196 Ill. 2d 405, 418-19 (2001). We realize that there may come a point where the value of issuing an amended certification would be outweighed by the burden of implementing it. For instance, if a minor "error," for example, a misplaced comma, was discovered shortly before the election, it would likely be impractical to issue an amended certification and require the counties to correct their ballots. Interpreting "shall" as mandatory would lead to the absurd result of requiring defendants to issue amended certifications even when only such a minor "error" is present. We conclude, therefore, that the word "shall," within the context of the amendment powers given to defendants under section 7—14, is directory, not mandatory.

Accordingly, we hold that the amendment provision of section 7—14 gives defendants discretion to issue amended certifications any time before the election takes place. We realize that the exercise of this discretion may cause some errors not to be corrected; however, we must assume that defendant, the State Board of Elections, as the public agency charged with administering the Election Code, will exercise its discretion in good faith and for the benefit of the people of Illinois. See *Bay Bottoms Drainage District v. Stokes*, 291 Ill. 68, 72-73 (1919).

## 2. Construction of "in error"

Now we must construe what "in error" contemplates and determine whether candidate withdrawal is encompassed by our construction. Plaintiff contends that the trial court was correct when it relied on Black's Law Dictionary and our supreme court's decision in *Kozel v. State Board of Elections*, 126 Ill. 2d 58 (1989), and interpreted "in error" to mean a mistake, more specifically, a mistake made in the process of certification. The supreme court in *Kozel* stated

that "[i]f a mistake occurs *in certification*, it may be corrected" pursuant to section 7—14. (Emphasis added.) *Kozel*, 126 Ill. 2d at 68. Black's Law Dictionary defines "error" as "[a] psychological state that does not conform to objective reality; a belief that what is false is true or that what is true is false; MISTAKE." Black's Law Dictionary 562 (7th ed. 1999). Plaintiff urges that the trial court used these two sources to correctly define "in error" as a mistake made in the process of certification.

Defendants respond that plaintiff's interpretation is faulty. They claim that "in error" refers to the accuracy of the original certification itself. Therefore, defendants contend that an original certification that is "in error" means that the certification document is "inaccurate," not that there was a flaw in the process of certification. To support their proposition, defendants give an example from Webster's Third New International Dictionary. In demonstrating how the word "error" is used to refer to "setting forth what is not true," the dictionary gives the example: "the map is in error regarding the junction." Webster's Third New International Dictionary 772 (1993). Defendants assert that this phrase could mean that a street had been rerouted subsequent to the creation of the map, causing the map to become inaccurate. Therefore, according to defendants, even though the map was correct when created, it subsequently became "in error" due to changes in the roadways. Analogously, defendants contend that a certification could be correct when issued but subsequently become "in error," that is, inaccurate, because of changed circumstances, including the withdrawal of a candidate. Further, defendants argue that section 7—14 allows amendment when a certification "*is* in error" not *was* "in error." According to defendants, if the legislature wished to confine their amendment power solely to "errors" made prior to the time of certification, it would have used the past tense "was" instead of the present tense "is."

Preliminarily, we find that defendants' arguments regarding the use of the word "is" instead of "was" to be unpersuasive. If one were asked to describe a certification that is currently inaccurate, whether due to pre- or postcertification acts or events, one would respond that the "certification *is* in error." Use of the word "is" in this context could refer solely to events prior to certification, as plaintiff contends, or to events after certification or to both, as defendants contend. As a result, the use of the word "is" does not impact our analysis of the reasonableness of either plaintiff's or defendants' construction of section 7—14.

Faced with two interpretations of section 7—14, we must turn to the rules of statutory construction. An agency's reasonable

interpretation of an ambiguous statute, if contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence, creates a presumption of correctness that is only slightly less persuasive than a judicial construction. *Birkett*, 202 Ill. 2d at 46. However, it is also true that an agency's interpretation is not binding and will be rejected if it is erroneous. *Birkett*, 202 Ill. 2d at 48. We will analyze the instant case under these rules.

### a. "Ambiguous"

A statute is ambiguous if it is capable of two or more reasonable interpretations. *People v. Donoho*, 204 Ill. 2d 159, 172 (2003). If a statute is ambiguous, the court will accord "substantial weight and deference" to the interpretation of the administrative agency charged with administering the statute. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 474 (1998). We begin our analysis by determining whether the phrase "in error" is ambiguous. In order to do so, we must examine whether the interpretations of both plaintiff and defendants are reasonable.

Plaintiff's contention, and the trial court's holding, that "in error" refers solely to mistakes made in the original certification is reasonable. We disagree with plaintiff that *Kozel* stands for the proposition that only mistakes made at the time of certification constitute "error" under section 7—14. *Kozel* simply states that mistakes in certification made by defendants are "errors" under section 7—14; it does not state that "error" is limited to mistakes in certification. *Kozel*, 126 Ill. 2d at 68-69. Consequently, *Kozel* does not answer our question of the scope of "in error." However, we do agree with plaintiff that, following the definition in Black's Law Dictionary, the legislature could have reasonably intended that "in error" would refer only to mistakes made at the time of certification because the value of having an absolute deadline, even in the face of a postcertification desire of a candidate to withdraw, outweighed any benefit of having a completely accurate ballot.

However, defendants' proposed definition of "in error," that is, inaccurate, is also reasonable. First, equating an error with an inaccuracy in the ballot would encompass the mistakes referred to in *Kozel*. A certification could be inaccurate because of a mistake made by defendants at the time of certification as well as because of changed circumstances subsequent to certification. Second, it is certainly reasonable that the legislature could have intended to give defendants the power to correct inaccuracies that occurred prior to certification and any inaccuracies that arose postcertification. Clearly the legislature has given defendants the power to issue amended certifica-

tions because it feels that there is value in having accurate ballots. We find it eminently reasonable that the legislature could have felt that it is of paramount importance to both the candidates and the citizens of Illinois that only those candidates who wish to accept a nomination are included on the ballots so that votes are not "wasted." Therefore, the legislature could have intended that "in error" should trigger the discretionary power of defendants to issue amended certifications to reflect changed circumstances such as postcertification withdrawals.

Plaintiff offers several reasons to support their claim that defendants' interpretation is incorrect and unreasonable. Plaintiff argues that defendants' interpretation would render sections 7—12(9), 7—13.1, and 7—14 meaningless. First, plaintiff contends that section 7—12(9) clearly states that a candidate can withdraw his name from the ballot only up until the date of certification. This, according to plaintiff, establishes an absolute deadline by which a candidate may have his name removed from the ballot. Therefore, a withdrawal after certification cannot be an "error" because, under the Election Code, a candidate's name may not be removed from the ballot after certification.

Defendants reply that section 7—12(9) addresses the absolute right of a candidate to withdraw, not their authority to issue amended certifications under section 7—14. To support this contention, defendants point to the previously enacted section 10—7 of the Election Code (10 ILCS 5/10—7 (West 2002)), addressing withdrawal of candidates who do not belong to a major party. The withdrawal provisions of section 10—7 currently mirror those of section 7—12(9); however, defendants point out that this was not always so. Previously, section 10—7 had expressly stated that "any purported withdrawal filed after [the time limit expired] shall be null and void" and it provided monetary penalties and potential jail time for any public officer that accepted or acted upon a late withdrawal. Ill. Rev. Stat. 1943, ch. 46, par. 10—7. Thus, defendants suggest, it is clear that when the legislature wishes to provide for strict time limits governing all forms of candidate withdrawal, it does so expressly and not by implication.

We agree with defendants. Section 7—12(9) refers to when "[a candidate] may cause his name to be withdrawn," not when defendants may amend a certification. There is no language in section 7—12(9) that purports to limit defendants' authority to remove a name from a ballot, unlike the pre-amendment language of section 10—7, which stated that "*any* purported withdrawal filed after [the time limit expired] shall be null and void." (Emphasis added.) Ill. Rev. Stat. 1943, ch. 46, par. 10—7. By enacting the deadline imposed by section

7—12(9), the legislature has simply stated that a candidate has the absolute right to withdraw and to assure that his name does not appear on the original certification. Consequently, giving section 7—14 the meaning that defendants suggest does not render section 7—12(9) meaningless because they address two separate issues, that is, a candidate's absolute right to withdraw and preclude his name from appearing on the original certification versus defendants' power to remove a candidate from the ballot.

Next plaintiff contends that defendants' construction of section 7—14 would render the time limits for the original certification under sections 7—13.1 and 7—14 meaningless and, therefore, such a construction is unreasonable. Section 7—14 states that defendants "shall" issue an original certification for general primaries "[n]ot less than 61 days before the date of the general primary." 10 ILCS 5/7—14 (West 2002). The same deadline is provided under section 7—13.1 for each local election official to present an original certification for consolidated primaries to the local election authority. Plaintiff argues that by allowing defendants to issue amended certifications whenever they choose, there essentially would be no time limit for certification. Defendants respond that there is no strict time limit for issuing an original certification because the requirement that they "shall" issue a certification "[n]ot less than 61 days before the date of the general primary" is directory, not mandatory. 10 ILCS 5/7—14 (West 2002). Defendants claim that the fact that section 7—14 provides for no penalty for their failure to certify in time and that the legislature knows how to provide for penalties if it so chooses as evidenced by the previous version of section 10—7, shows that there is no strict time limitation by which they must issue their original certification.

We disagree with both plaintiff and defendants. Initially, we note that defendants concede in their opening brief that they must certify the ballot not less than 61 days before an election; they then attempt to argue in their reply brief that this requirement is directory and not mandatory. Furthermore, the best indicator of the intent of the legislature is the plain language of the statute. *Allstate Insurance Co.*, 202 Ill. 2d at 591. In this case, the use of the language "shall" in conjunction with "not less than" clearly indicates that the legislature meant for an original certification to be issued not later than 61 days before the date of the general primary election. Moreover, as we discuss below, the purpose of this part of section 7—14 indicates that the time set for issuing an original certification is mandatory.

Defendants point to *Brennan v. Illinois State Board of Elections*, 336 Ill. App. 3d 749 (2002), and *Maske v. Kane County Officers Electoral Board*, 234 Ill. App. 3d 508 (1992), to support their proposi-

tion that a statutory provision that specifies the time for performance of an official duty but does not provide a penalty for noncompliance is directory and not mandatory. In *Brennan*, the petitioner attempted to have a decision of the defendants, finding that he had intentionally violated certain provisions of the Election Code, reversed. *Brennan*, 336 Ill. App. 3d at 752. The petitioner argued that the defendants lacked jurisdiction to adjudicate the petitioner's alleged violations of the Election Code because the time limit set in section 9—21 (10 ILCS 5/9—21 (West 2000)) for passing final judgment had passed. *Brennan*, 336 Ill. App. 3d at 759-61. The court held that section 9—21 of the Election Code, which states that "the Board shall render its final judgment within 60 days of the date the complaint is filed" (10 ILCS 5/9—21 (West 2000)), was directory because, *inter alia*, there was no penalty, such as loss of jurisdiction, for rendering a final judgment beyond the 60-day time period. *Brennan*, 336 Ill. App. 3d at 759-61. Similarly, in *Maske*, the plaintiff argued that the Kane County Officers Electoral Board's decision to deny his nominating petition was a nullity because the board did not convene within the appropriate time period. *Maske*, 234 Ill. App. 3d at 513-16. The court held that section 10—10 of the Election Code, which states that the time period when the electoral board will meet to hear objections to nominating petitions " 'shall not be less than 3 nor more than 5 days after the receipt of the certificate of nomination or nomination papers and the objector's petition by the chairman of the electoral board' " (emphasis omitted) (*Maske*, 234 Ill. App. 3d at 513, quoting Ill. Rev. Stat. 1991, ch. 46, par. 10—10), was directory because, unlike other sections of the Election Code, that section failed to indicate what would occur if the procedure was not followed. *Maske*, 234 Ill. App. 3d at 515-16.

In our view, when the legislature, in charging a public agency to act, uses "shall" in conjunction with additional plain language, such as "not less than," that clearly indicates that there is a strict time limitation, we decline to read such a provision as directory simply because the legislature has not provided a penalty for noncompliance.

Furthermore, while the cases cited by defendants do stand for the proposition that the lack of a penalty in such a statute generally makes the time limit directory and not mandatory, they also recognize that they could not have construed the provisions as directory if the Board's conduct had prejudiced someone's rights. *Brennan*, 336 Ill. App. 3d at 759-61; *Maske*, 234 Ill. App. 3d at 515. Moreover, our supreme court has held that if disregard of the time limits would injuriously affect public interests or private rights, the statute will be held to be mandatory and not directory. *Radazewski v. Cawley*, 159 Ill. 2d 372, 377 (1994).

The only interests at stake in *Brennan* and *Maske* were private rights, and those courts found that those rights had not been prejudiced. *Brennan*, 336 Ill. App. 3d at 761; *Maske*, 234 Ill. App. 3d at 516. However, in this case, one of the purposes of the time limit set for the date of original certification is to protect the private rights of candidates. We believe that candidates have a right to know who their opponents are and are entitled to have a reasonable amount of time to campaign. Furthermore, the time limit serves the best interests of the public by facilitating the ability of the citizenry to make informed voting decisions. Candidates should have a reasonable opportunity to state their own platforms and respond to those of their opponents. Therefore, reading the deadline for original certification under section 7—14 as directory would be injurious to the private rights of candidates and the public interest because it would potentially limit the information available to both candidates and voters upon which to make their decisions. Consequently, we hold that the "[n]ot less than 61 days" time limit set in section 7—14 by which defendants must issue their original certification is mandatory, not directory. The reasoning we have set forth is equally applicable to section 7—13.1 and, therefore, we hold the time limit set for original certification under section 7—13.1 is also mandatory.

However, even though we hold that the provisions of sections 7—13.1 and 7—14 regarding the time limit for issuance of an original certification are mandatory, we do not find that adopting defendants' interpretation of the amendment provision of section 7—14 would render time limits meaningless. Defendants may issue amended certifications only when the original certification is "in error." This represents the outer limits of defendants' amendment power. Consequently, after an original certification is issued, defendants may issue an amended certification only when an "error" is present, not simply because they desire to do so. Therefore, an original certification made under section 7—14 is not meaningless because defendants may not simply choose to ignore it. Once again, our reasoning is equally applicable to certifications issued pursuant to section 7—13.1 and amendments of such certifications.

Accordingly, we hold that the amendment provision of section 7—14 is ambiguous.

### b. "Contemporaneous, Consistent, Long-continued, and in Concurrence with Legislative Acquiescence"

Plaintiff conceded during the hearing in the trial court that defendants have issued amended certifications reflecting postcertification withdrawals for many years. Consequently, we find that the posi-

tion of defendants has been long-continued. Furthermore, we must presume that, because defendants have interpreted the statute thusly for many years, the legislature is aware of defendants' interpretation. Given this awareness, the legislature has acquiesced because it has not revised the amendment provisions of section 7—14 to indicate disagreement with defendants' interpretation. See *People ex rel. Spiegel v. Lyons*, 1 Ill. 2d 409, 414 (1953). Finally, we must consider whether defendants' interpretation was consistent and contemporaneous, that is, made at the same time or soon after section 7—14 went into effect. The record does not indicate whether the interpretation has been consistent or when defendants first interpreted section 7—14 in this way and, therefore, whether the interpretation was contemporaneous. However, we do not find the lack of such evidence to be dispositive because the other factors for granting deference to defendants' interpretation have clearly been met (see *Yu v. Clayton*, 147 Ill. App. 3d 350, 356 (1986) (holding that, although the factors to be considered when giving deference to administrative interpretations are whether the interpretation is contemporaneous, consistent, long held, and in concurrence with legislative acquiescence, long-term adherence to a particular interpretation is not a prerequisite to judicial deference but simply adds weight to the validity of the agency's construction)). There is no indication in the record that defendants' interpretation has not been consistent or was not contemporaneous. Additionally, defendants may not have had occasion to immediately interpret the relevant provisions of section 7—14 contemporaneously because a postcertification candidate withdrawal may not have occurred until sometime after section 7—14 had gone into effect.

The State Board of Elections is the administrative agency charged with administering the Election Code. Ill. Const. 1970, art. III, § 5; 10 ILCS 5/1A—1 (West 2002); 10 ILCS 5/1A—8(12) (West 2002) (stating that defendants are to "[s]upervise the administration of the registration and election laws throughout the State"). As we have said, the criteria that give rise to the presumption of correctness of an agency's interpretation of a statute have been met in this case. Because defendants' interpretation is reasonable, and not erroneous, and because plaintiff has not presented any arguments that persuade us that defendants' interpretation should not be given deference, we adopt defendants' interpretation of the amendment provision of section 7—14.

Accordingly, we hold that "in error," within the context of section 7—14, means inaccurate. Therefore, the inclusion on a certification of the name of a candidate who wishes to withdraw would cause a certification to be inaccurate and, thus, be "in error." Consequently,

defendants have the discretionary authority to issue amended certifications omitting a withdrawn candidate's name after the time for certification has passed. Plaintiff, and all other local election authorities, must comply with all amended certifications properly issued pursuant to section 7—14. See 10 ILCS 5/7—17 (West 2002) ("[the] election authority in each county shall cause to be printed upon the general primary ballot *** the name of each candidate whose name has been certified to his office by the State Board of Elections, and in the order so certified"). We note that by mandating compliance we do not mean to require local election authorities to achieve the impossible. If local election authorities fail to comply with an amended certification, they will still have fulfilled their statutory duty if they have exhausted all reasonable means to comply.

### 3. Public Policy Concerns

Plaintiff contends that there are public policy concerns regarding the uniformity of ballots, the ability of the counties to issue absentee ballots, and the potential cost of reprinting ballots. According to plaintiff, if an amended certification is issued some counties may be in a position to amend their ballots accordingly and others may not. Consequently, some ballots will reflect the new certification and others will not. Furthermore, plaintiff argues, some counties will not be able to afford to reprint ballots should that be necessary. Finally, plaintiff is concerned that the issuance of an amended certification could cause it to miss its deadline for issuing absentee ballots because it would have to print new ballots.

While some of plaintiff's contentions have merit, it misconstrues the role of this court. When construing a statute, the court must give effect to the intent of the legislature. *Birkett*, 202 Ill. 2d at 45. In this case, the legislature has decided to allow defendants to balance public policy concerns by giving them discretionary authority to issue amended certifications. The legislature is the final arbiter of public policy (*Champaign Township v. County of Champaign*, 331 Ill. App. 3d 582, 590 (2002)). The legislature has seen fit to give defendants discretionary amendment power under section 7—14. With this power necessarily comes the authority to weigh the public policy concerns discussed above when deciding whether or not it is reasonable to issue an amended certification. We will not second-guess the wisdom of the legislature's decision to bestow this power upon defendants.

Moreover, while we do agree with plaintiff's contention that postcertification amendments could cause problems if such amended certifications were issued close to when absentee ballots needed to be sent out, we fail to see how these problems would be exacerbated

simply because the amended certification was predicated by a postcertification withdrawal instead of some other reason. In other words, if defendants discovered that they neglected to include a candidate in their original certification, there is no dispute that they would have the power to issue an amended certification even though such an issuance could cost the counties a significant amount of money to implement, cause absentee ballots to be mailed late, or cause ballots not to be uniform. The problems associated with issuing an amended certification predicated on a postcertification withdrawal would be no greater than the problems associated with adding a candidate. It is within the province of defendant, the State Board of Elections, as the public agency charged with administering the Election Code, to weigh these problems and concerns when deciding whether to exercise its discretion to issue amended certifications.

## III. CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court of Du Page County granting declaratory judgment in plaintiff's favor.

Reversed.

HUTCHINSON, P.J., and GROMETER, J., concur.