(No. 34769.—

LAWRENCE H. CARR, Appellant, *vs.* BOARD OF EDUCATION OF HOMEWOOD-FLOSSMOOR COMMUNITY HIGH SCHOOL DISTRICT NO. 233, Appellee.

*Opinion filed May 21, 1958.*

HENRY W. LEHMANN, of Chicago, for appellant.

KLEIN & THORPE, of Chicago, (FRANKLIN W. KLEIN, of counsel,) for appellee.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

Plaintiff, a taxpayer of the school district, brought this proceeding against the defendant, Board of Education of Homewood-Flossmoor Community High School District No. 233, Cook County, Illinois, for a declaratory judgment that three elections held on July 20, 1957, August 3, 1957, and August 17, 1957, to increase school tax rates were void for failure of the voters to execute affidavits as provided by section 1—4 of article I of the School Code, (Ill. Rev. Stat. 1957, chap. 122, par. 1—4,) and that the defendant is therefore not authorized to levy taxes at such purportedly increased rates. The superior court of Cook County entered a decree declaring the elections valid, and plaintiff appeals directly to this court. Revenue is involved.

The case was tried below upon a stipulation of facts. The defendant is the board of education of a high school district created on February 28, 1957, pursuant to article 4B of the School Code. (Ill. Rev. Stat. 1957, chap. 122, par. 4B—1 et seq.) The maximum authorized tax rate upon all the taxable property of the district, without prior referendum, is .65 percent for educational purposes, and .1875 percent for building purposes. (Ill. Rev. Stat. 1957,

chap. 122, par. 17—2.) By referendum, this maximum tax rate may be increased to 1.40 percent for educational purposes and .25 percent for building purposes. However, the educational rate cannot be increased more than .21 percent at any one election. (Ill. Rev. Stat. 1957, chap. 122, par. 17—3.) Accordingly the defendant board called three elections for the purpose of ultimately voting a maximum rate of 1.25 percent for educational purposes as well as a building purpose rate of .25 percent. The building rate increase carried by 779 to 219. The educational rate increases were approved by a vote of 776 to 221 at the July 20 election; by 745 to 186 on August 3; and by 754 to 186 on August 17. In holding these elections there was no challenge of any person offering to vote, and subsequently no contest of election was filed.

By the stipulation of facts it is agreed that all persons who voted at the elections were qualified voters as defined in section 5A—3 of article 5A, of the School Code, (Ill. Rev. Stat. 1957, chap. 122, par. 5A—3,) and that there was no fraud, improper conduct, or other irregularity at the elections, except the failure of voters to execute the affidavits of qualification prescribed by section 1—4 of article I of the School Code.

The plaintiff urges that section 1—4 is a mandatory provision of the School Code, and that failure to comply with its provisions renders the election void. The defendant board concedes that the affidavits were not executed due to inadvertence, but contends that, in the absence of fraud, the statutory provision should be considered as directory only.

This precise question is one of first impression and narrow compass. No fraud is present, and the will of the voters, as expressed at the election, is not questioned. To hold this election void, we must determine that the affidavit requirement is an absolute condition precedent to the right to vote in every school election. Article 5A of the School

Code, (Ill. Rev. Stat. 1957, chap. 122, par. 5A—1 *et seq.*) pertains to school elections, enumerates the qualifications of voters, the method of calling and holding elections, the form of notice and ballots, and the manner of canvass and contest. Section 5A—4, which is not applicable to the district in question, provides for the registration of voters in school districts which include all or any part of a city of 75,000 persons or more, having a board of election commissioners. (Ill. Rev. Stat. 1957, chap. 122, par. 5A—4.) However, prior to July 8, 1957, article 5A prescribed no specific method for determining whether a person was a qualified voter, other than the requirement of registration under the provisions of section 5A—4. Consequently, prior to the enactment of section 1—4, the determination of the qualification of voters was made by the judges of the election pursuant to the provisions of section 5A—3, subject to review in an election contest. By an act approved July 8, 1957, the legislature added section 1—4 to article I of the School Code, which provides: "In all elections held under this Act for any purpose whatsoever, except where Section 5A—4 of this Act applies, all persons desiring to vote shall sign an affidavit which shall contain the following: (a) the name and address of the voter, (b) statement that the voter resides within the particular district and (c) statement that the person desiring to vote is a qualified voter." (Ill. Rev. Stat. 1957, chap. 122, par. 1—4.) It is apparent that this statute was designed to aid election officials in determining the qualifications of voters. The statute neither specifically provides, as do registration statutes, that it shall be "unlawful" for any person to vote without complying with the statute, (cf. Ill. Rev. Stat. 1957, chap. 46, pars. 4—1 and 5—1,) nor declares invalid the vote of any person who fails to execute such affidavit. The absence of such provisions indicates that the statute is directory. In considering analogous problems pertaining to the essential formalities of a valid ballot, we quoted Professor Wigmore from his treatise

on the Australian Ballot System, 2d ed., p. 195: "Wherever our statutes do not expressly declare that particular informalities do not avoid the ballot, it would seem best to consider their requirements as directory only." *Gulino* v. *Cerny,* 13 Ill.2d 244; *Parker* v. *Orr,* 158 Ill. 609, 616.

No universal rule can be fixed to distinguish between directory and mandatory provisions of the statutes. Whether an enactment is one or the other depends upon the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction. In this respect, we may take into consideration the circumstances attending an election. (*Gulino* v. *Cerny,* 13 Ill.2d 244; *Cray* v. *Davenport,* 333 Ill. 375.) In the election under consideration, it is agreed that every person who voted was a qualified voter of the school district and that there was no fraud or irregularity of any kind attending the election, except the failure of the voters to execute the affidavits in compliance with section 1—4. This statutory omission neither perpetrated fraud at the election, nor hindered the rights of any person to challenge the qualifications of any voter, or contest the election. The primary purpose of this statute is to obtain fair and honest elections and we believe that this end is paramount in importance to the formal steps prescribed as a means to its achievement. (*Zbinden* v. *Bond County School Dist.* 2 Ill.2d 232, 236; *People ex rel. Agnew* v. *Graham,* 267 Ill. 426, 438.) We therefore conclude that section 1—4 of the School Code is not similar in form or in purpose to the mandatory provisions of the Registration Act (Ill. Rev. Stat. 1957, chap. 46, pars. 4—1 and 5—1) which make it unlawful for an unregistered elector to vote. *Tuthill* v. *Rendelman,* 387 Ill. 321.

Ballots duly received by the judges of an election and deposited in the ballot box are presumed to be legal until the contrary is shown. In the case at bar, the ballots were so received and deposited and there was a complete absence

of countervailing evidence. (*Flowers* v. *Kellar*, 322 Ill. 265, 269.) In view of all these facts and circumstances, the failure to comply with section 1—4 ought not invalidate the clear expression of the will of the voters of the district. We accordingly affirm the decision of the trial court.

*Judgment affirmed.*