ARLEEN FITZPATRICK, Plaintiff-Appellant, v. KATHERINE CARR, Defendant-Appellee (Russell Johnson *et al.*, as the Canvassing Board of the City of Kankakee, *et al.*, Defendants).

Third District   No. 3—90—0426

Opinion filed October 18, 1991.

Robert M. Motta, of Oak Park (Michael E. Lavelle, of counsel), for appellant.

Power & Kick and Carr & Carr, both of Kankakee (L. Patrick Power and Fred S. Carr, Jr., of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Arleen Fitzpatrick, appeals the order and judgment of the trial court in favor of the defendant, Katherine Carr, in which the court held for Carr in Fitzpatrick's suit to contest the election results within the first precinct, second ward, in Kankakee. We reverse and remand this matter for further proceedings consistent with the directions contained herein.

Arleen Fitzpatrick and Katherine Carr were opposing candidates for the office of city clerk of the City of Kankakee in the April 4, 1989, election. Carr received a 140-vote plurality following the election.

On May 8, 1989, Fitzpatrick filed a lawsuit to contest the election results within the first precinct, second ward. She claimed the following: the ballot labels were switched on automatic voting machine 165681; the election results were therefore incorrect and invalid; that Fitzpatrick should receive the votes which, in fact, were cast for her, but counted for Carr; and that the outcome of this election should be changed.

On April 4, 1989, in the first precinct, second ward, was located voting machine 165681, which was used in this election. Voting machine 165681 was a nine-row machine with 40 columns. Across the top of the face of this voting machine were located the offices to be voted upon, and the candidates' names were listed vertically beneath the offices. When a voter enters this voting booth, he pulls the red handle, which closes the curtain behind him and unlocks the machine for voting. A voter can cast a straight Democratic or straight Republican ballot by pulling the lever which has the party designation on it. When the voter does so, the individual levers for each candidate come

down at a 45-degree angle to the left and over the name of each Democratic or Republican candidate. If the voter chooses not to cast a straight-party ballot, the voter individually pulls each lever for the candidates the voter wishes to vote for at a 45-degree angle to the left and over the candidates' names. When the voter completes casting his ballot, the voter again pulls the red lever. The votes are then mechanically recorded, the machine is then automatically relocked, the curtain opens, and the voter exits from the voting booth.

■ Sections 24—12 and 24—13 of the Election Code (the Code) (Ill. Rev. Stat. 1989, ch. 46, pars. 24—12, 24—13) set forth strict statutory requirements which must be scrupulously adhered to in elections.

Section 24—12 of the Code reads in pertinent part:

> "The election authority shall provide at least 4 facsimile diagrams which shall be arranged in the form of a diagram showing the entire front of the voting machine as it will appear after the official ballot labels are arranged for voting purposes on election day." Ill. Rev. Stat. 1989, ch. 46, par. 24—12.

Section 24—13 of the Code reads in pertinent part:

> "The election authority shall before the day of election, cause the proper ballot labels, together with the transparent protective covering for same, to be put upon each machine, corresponding with the sample ballot labels herein provided for, and the machine in every way to be put in order, set and adjusted, ready for use in voting when delivered at the precinct polling places ***. *** Unless objection is filed, within 2 days, with the election authority, to the use of a particular machine or machines, such voting machine or machines when certified to be correct by the custodian shall be conclusively presumed to have been properly prepared for use at the election for which they were prepared." Ill. Rev. Stat. 1989, ch. 46, par. 24—13.

■ A sample paper ballot was prepared for use in the first precinct, second ward. The sample paper ballot used was, in fact, a duplicate of the paper absentee ballot used in this election. Section 24—12 of the Code requires the election authority to furnish a facsimile diagram. Black's Law Dictionary defines "facsimile" as "[a]n exact copy, preserving all the marks of the original." (Black's Law Dictionary 531 (5th ed. 1979).) The sample paper ballot was substituted by the election authority and used as the "facsimile diagram" of the face of voting machine 165681. No actual facsimile diagrams were printed for this voting machine as required by the Code. The sample paper ballot

used should have been an exact reflection of the actual face of voting machine 165681 used in the first precinct, second ward.

It is undisputed that during the discovery recount conducted within this precinct on April 24, 1989, the candidates' names appeared on the face of the automatic voting machine in reverse order. Each horizontal line is assigned a letter, *e.g.*, "A," "B," "C," or "D." The "A" should appear on the first line and the "D" should appear on the fourth line of the machine when the machine is properly prepared. On automatic voting machine 165681, "D" was positioned on the third line and "C" was located on the fourth line. Therefore, the names of Carr and Fitzpatrick on the face of voting machine 165681 were in reverse order.

When the polling place in the first precinct, second ward, closed on April 4, 1989, the election judges broke the seal on voting machine 165681 and read by row number the total number of votes cast for the candidates. One of the judges read the recorded totals by row number to the other judges who then recorded them on election tally sheets by total number. The seal on voting machine 165681 was intact. It was removed, and the voting machine was examined and tested. No definitive irregularity was determined. Because the recorded totals are by row number only, and not by name, the readings by the election judges and the recorded totals would have been consistent with the machine's operation but inconsistent with the face of the machine and the way in which the voters had attempted to cast their ballots.

Documentary and testimonial evidence was presented to the trial court that "substantial compliance" with the Code occurred with respect to the preparation of voting machine 165681. Having so found, the trial court applied the conclusive presumption contained within section 24—13 of the Code. The trial court then granted Carr's motion *in limine* and ruled that Fitzpatrick could not introduce evidence tending to establish that voting machine 165681 was improperly prepared.

It appears from the record that the trial court failed to enforce its ruling on Carr's motion *in limine*. Carr waived enforcement of the court's ruling by allowing certain evidence to be introduced which should have been excluded based on the court's original ruling on the motion *in limine*. However, this issue is irrelevant for purposes of this appeal.

In this appeal, the crucial issue is when the voting machine labels were changed. If it can be determined when the labels were changed, did such change result in votes being cast for the wrong candidate?

■ We find from our review of the record that the trial court misapplied the conclusive presumption of the Code. Application of the conclusive presumption is predicated upon the completion of *all* detailed and specific acts to be performed by the election authority as set forth in the Code. The specificity of sections 24—12 and 24—13 of the Code shows a clear legislative intent: (1) that the machines shall be in every way in proper working order; (2) that the vote registering counters be in accurate working condition; and (3) that the facsimile diagrams used agree *exactly* with the ballot labels used on the face of the voting machines. The trial court's finding of "substantial compliance" is not a standard contemplated by section 24—13 of the Code.

It is uncontroverted from the record that the election authority did *not* prepare a facsimile diagram which agreed exactly with the ballot labels used on the face of voting machine 165681. Sample paper ballots were used instead. The sample paper ballots contained no numerical or alphabetical designations. In contrast, the face of voting machine 165681 had letter and numerical designations with the political parties and candidates' names arranged in four horizontal lines. It would be impossible to use the sample paper ballot prepared by the election authority to determine the proper ballot placement on the face of voting machine 165681.

■ The clear objective of the legislative mandate requiring facsimile diagrams is to provide a means whereby the election judges can confirm that the labels are in their proper location and that votes will be mechanically counted for the candidate for whom they are cast. Without the detailed facsimile diagrams required by the Code, the election judges could not verify the correctness of the ballot label placement on the face of the machine. Therefore, it was impossible for the election judges to correctly certify that the ballot label placement on the face of voting machine 165681 agreed with the facsimile diagram. Thus, the conclusive presumption used by the trial judge was in error.

Although it is uncontradicted that the "C" and "D" labels on voting machine 165681 used in the first precinct, second ward, were in the wrong position at the time of the discovery recount, it is not apparent whether the switch occurred in the preparation of the voting machine before it was delivered to the polling place or at some subsequent time.

Voting machine 165681 was prepared and stored at the county highway garage both before and after the election. From Monday evening through Wednesday morning of election week, voting machine 165681 was located at the polling location. At all other relevant times,

voting machine 165681 was secured at the county highway garage. On the date of the election, no election official or judge noticed any tampering, abnormality or irregularity with respect to the voting machine. An election judge at the polling place checked the names on the sample paper ballot with those appearing on voting machine 165681. However, she did not check them for proper position since an accurate facsimile diagram of the face of voting machine 165681 was not furnished by the election authority as required by the Code.

In addition to the proper preparation of the facsimile ballot required by section 24—12 of the Code, section 24—13 of the Code requires the following: the issuance of a proper notice of the preparation of the voting machines to the proper authorities, testing of the voting machines for any mechanical problems, and the certification of the lack of such mechanical problems. Fitzpatrick contends the requisite notices issued by the county clerk were insufficient in that they were sent to the wrong party officials and authorities and in an untimely fashion. In light of our holding in this opinion, we do not at this point address the merits of this argument. Rather, this argument is an area of inquiry the trial court should consider on remand.

■■ "The general purpose of all election laws is to obtain fair and honest elections ***." (*Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 66, 561 N.E.2d 585, 605.) "[W]e believe that this end is paramount in importance to the formal steps prescribed as a means to its achievement." (*Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233* (1958), 14 Ill. 2d 40, 44, 150 N.E.2d 583, 586.) In an election contest, a trial court should attempt to ascertain whether the voter intended to vote for the appellant or appellee or whether this intent can be ascertained at all. See *Pullen*, 138 Ill. 2d at 86, 561 N.E.2d at 614.

■■ We hereby remand this matter for further proceedings with the following directions: (1) if the trial court determines that the ballot placement error on the face of voting machine 165681 occurred prior to the election or during the set-up phases of the election proceedings, the trial court is instructed to reverse the election results of Fitzpatrick and Carr for the first precinct, second ward; (2) if the trial court determines that the ballot placement error on the face of voting machine 165681 occurred at any time during the election held on April 4, 1989, the trial court is instructed to void all election results of Fitzpatrick and Carr for the first precinct, second ward; or (3) if the trial court determines that the ballot placement error on the face of voting machine 165681 occurred subsequent to the election, the trial court is instructed to maintain the status quo and affirm the elec-

tion results of Fitzpatrick and Carr for the first precinct, second ward.

For the reasons herein set forth, the circuit court of Kankakee County is reversed. This matter is hereby remanded to the circuit court for further proceedings including, but not limited to, conducting another evidentiary hearing consistent with the directions herein contained.

Reversed and remanded.

GORMAN and SLATER, JJ., concur.