# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Board of Education of Valley View Community Unit School District No. 365-U v. Illinois State Board of Education***, 2013 IL App (3d) 120373

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT NO. 365-U, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF EDUCATION, STEVEN M. BIEREG, and LYNN REID, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0373 |
| Filed | October 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A hearing officer's reversal of plaintiff school district's decision to terminate defendant from her position as a school psychologist was upheld on appeal along with the order for her reinstatement with full back pay, since the procedural errors, including the presentation of evidence to the hearing officer without a stenographer, the hearing officer's failure to state that the order entered was subject to administrative review, and his failure to issue a decision within 30 days, did not materially affect the school district's rights or result in any substantial injustice, and the hearing officer's findings and final decision were not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-MR-0767; the Hon. Barbara N. Petrungaro, Judge, presiding. |
| Judgment | Confirmed. |

Counsel on Appeal

Jeffrey M. Alperin (argued), of Tressler LLP, of Bolingbrook, for appellant.

Lisa Madigan, Attorney General, of Chicago (Janon E. Fabiano and Brian Barov (argued), Assistant Attorneys General, of counsel), for appellee Illinois State Board of Education.

Gilbert Feldman (argued), of Cornfield & Feldman, of Chicago, for other appellees.

Panel

PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion.

Justices Carter and McDade concurred in the judgment and opinion.

## OPINION

¶ 1    In 2010, defendant-appellee Lynn Reid (Reid), a tenured school psychologist and employee of plaintiff-appellant, Board of Education of Valley View Community Unit School District 365-U (the District) received an unsatisfactory performance evaluation from her principal, Donna Nylander. The District established a remediation plan for Reid but, eventually, the District terminated Reid's employment claiming Reid unsuccessfully completed the plan.

¶ 2    Reid appealed her termination by asking the Illinois State Board of Education (ISBE) for an administrative review of the District's decision. Reid asked ISBE to sustain her position that the District improperly terminated her tenured employment. Reid also asked ISBE to recognize that the administrator who made the final decision following remediation was Nylander, who "was unfair and biased against [Reid]." Thus, Reid claimed the District terminated her tenured employment without reliable evidence that her professional performance was, in fact, deficient before or after remediation.

¶ 3    After a lengthy process, based on a voluminous record, the administrative hearing officer determined the District terminated Reid based on a less than fair remediation process initiated and managed by Nylander. The hearing officer reversed the District's decision and ordered the District to reinstate Reid with full back pay.

¶ 4    The District now challenges ISBE's administrative decision before this court. We confirm.

¶ 5                                    BACKGROUND

¶ 6        The District employed Reid as a school psychologist from 2002 to 2010, making Reid a tenured employee. In April of 2009, Reid's principal, Nylander, performed an evaluation of Reid and noted deficiencies in Reid's performance. Consequently, Reid completed a "Professional Growth Program" to try to correct the alleged deficiencies that Nylander identified in her evaluation of Reid in April 2009.

¶ 7        On October 27, 2009, Nylander, once again, conducted an evaluation of Reid and determined Reid had not successfully completed the goals in the professional growth program. Consequently, on December 1, 2009, Reid received a formal copy of the evaluation, citing specific deficiencies in her performance as a school psychologist.

¶ 8        Thereafter, the District appointed a consulting teacher for Reid, Robin Black-Vannoy, and implemented a "remediation plan," effective January 11, 2010, in accordance with section 24A-5 of the School Code (105 ILCS 5/24A-5 (West 2008)).[1] The District gave Reid the opportunity to read, develop, and provide input concerning the remediation plan. Reid signed a copy of the remediation plan, noting that Reid understood its content.

¶ 9        As required by the detailed remediation plan in place, the District began ongoing informal observations of Reid's performance. Nylander personally observed Reid on 24 out of 29 occasions Reid was informally observed at work. In addition, Nylander, herself, formally evaluated Reid's performance in three separate, extensive, written evaluations completed after January 11, 2010. The final remediation plan evaluation, dated June 3, 2010, was also completed by Nylander and concluded Reid not only failed to correct her previous performance deficiencies in 4 or 5 categories but, during remediation, became deficient in 23 areas of concern. Following Nylander's final evaluation and based on Nylander's recommendation, the District terminated Reid's tenured employment on July 6, 2010.

¶ 10       Shortly thereafter, Reid requested administrative review by ISBE of the District's termination decision, pursuant to section 24-12 of the School Code. 105 ILCS 5/24-12 (West 2010).[2] In her request for administrative review, Reid asked the hearing officer to overturn her termination because the District failed to provide reliable proof that she continued to have skill deficiencies or actually unsuccessfully completed the remediation plan before her termination. Reid also argued, before the hearing officer, that Nylander was unfair and biased against her during the remediation plan process.

¶ 11       Pursuant to statute, the parties mutually selected the hearing officer and agreed Steven

_____

[1]The District's brief cites the 1992 statute (105 ILCS 5/24A-5 (West 1992)), and the ISBE brief cites the 2010 statute (105 ILCS 5/24A-5 (West 2010)). However, Public Act 96-861 (eff. Jan. 15, 2010) (amending 105 ILCS 5/24A-5 (West 2008) and other School Code provisions), but did not become effective until after the start of Reid's remediation plan. Thus, we use the language in effect at the time of the start of Reid's remediation plan (105 ILCS 5/24A-5 (West 2008)), which was the language used by the hearing officer when referring to this section in his decision.

[2]We use the statutory language from the 2010 statute, current at that time, when referring to procedural matters used during the administrative hearing in 2011.

Biereg (the hearing officer) should be appointed by ISBE to preside over the administrative hearing. On March 14, 2011, the administrative hearing took place.

¶ 12    However, before the hearing began, it became apparent that neither of the parties nor the hearing officer made arrangements for a court reporter to be present. Consequently, the hearing officer indicated he would digitally record the hearing for his own purposes and both parties agreed to this arrangement.[3] The hearing officer received the testimony of witnesses, heard final arguments, and filed a 22-page written decision, on July 18, 2011, which summarized the testimony of each witness before separately discussing the hearing officer's decision.

¶ 13    In this written decision, the hearing officer stated, "No transcript of the proceedings was prepared although the Hearing Officer did record the Hearing." The written decision included six pages of facts outlining the evidence presented at the administrative hearing.[4] The facts set out below are included in the hearing officer's summary of the evidence and testimony.

¶ 14    Reid worked at the District's Independence School from 2002 until the end of the 2004-05 school year. During those years, Reid consistently received excellent evaluations in all categories. Beginning the 2005-06 school year, the District reassigned Reid to the Valley View Early Childhood Center (Valley View), where Nylander was the principal. Reid had not previously worked with Nylander before her assignment to Valley View.

¶ 15    In November of 2006, during Reid's second year at Valley View, Nylander prepared Reid's first evaluation and gave Reid excellent ratings in all categories. In this 2006 evaluation, Nylander commended Reid "for her planning, methods and assessment skills, and knowledge of her subject matter."

¶ 16    In Nylander's next evaluation, conducted nearly three years later in March 2009, Nylander rated Reid as "unsatisfactory" in almost all categories and recommended Reid should "undergo a Remediation at this time." After Reid reviewed this evaluation, she responded to and disagreed with Nylander's conclusions.

¶ 17    Following Reid's response, Nylander submitted a "revised evaluation" in April 2009, which recommended "Re-employment with a Professional Growth Program," and withdrew the recommendation that Reid participate in a remediation plan. Reid agreed to participate in the professional growth program because Reid said she felt she could accomplish the goals listed in this program.

¶ 18    Reid testified that, at this point, she did not have a good working relationship with Nylander. According to Reid, near the end of the 2009-10 school year, Nylander told Reid

---

[3]Without objection, ISBE submitted an affidavit to the circuit court, prepared by the hearing officer, explaining the circumstances surrounding conducting the administrative hearing without a court reporter. According to this affidavit, neither party objected to conducting the hearing without a reporter or indicated it would like to postpone any portion of the hearing in order to secure a court reporter.

[4]Since the hearing was not transcribed, as agreed by the parties, we derive the facts presented at the administrative hearing as they were detailed in the hearing officer's written decision.

she intended to terminate Reid's employment. Nylander expressed that she would dramatically increase Reid's workload if Reid did not resign voluntarily, but promised to provide Reid with a favorable letter of recommendation if Reid left voluntarily.

¶ 19 Reid provided the hearing officer with a copy of the letter of recommendation Nylander wrote for Reid, dated May 16, 2009. The letter favorably discussed, in detail, Reid's qualifications, assigned duties, and abilities to successfully perform her duties as a school psychologist. In the final paragraph, Nylander recommended Reid as a school psychologist.

¶ 20 During Nylander's testimony before the hearing officer, Nylander denied having this conversation with Reid and denied attempting to secure Reid's voluntary resignation. According to Nylander, Reid was "freaking out" after receiving a negative evaluation from Nylander and Nylander simply used her own computer to show Reid the Illinois School Job Bank Internet site to help Reid learn how to find open positions at other school districts. Nylander said Reid actually requested Nylander to prepare a letter of recommendation for her to help her secure employment as a school psychologist at another school district.

¶ 21 After the May 16, 2009, letter of recommendation, Nylander next evaluated Reid on December 1, 2009. Nylander, once again, gave Reid a rating of "unsatisfactory" noting Reid was deficient in the areas of preparation and planning, instruction and assessment, and classroom management or learning environment. Reid strongly disagreed with this 2009 evaluation.

¶ 22 The District then established a "Final Remediation Plan" for Reid, effective on January 11, 2010. This plan detailed, in writing, the procedures to be followed and named Robin Black-Vannoy as Reid's consulting teacher. During this remediation process, Reid was observed 29 times: 24 times by Nylander and 5 times by Dr. David Hehl, described as a "qualified administrator."[5]

¶ 23 According to the hearing officer, Nylander testified extensively about her informal observations of Reid occurring after January 11, 2010, and the contents of her three formal written evaluations of Reid dated February 23, 2010, April 16, 2010, and June 3, 2010.[6] Hehl testified briefly concerning his observations of Reid during the same remediation period. Black-Vannoy, the consulting teacher, did not provide any documentation of her role during remediation or voluntarily testify at the hearing. The hearing officer, in his facts, noted that "there is no evidence in the record of any observation, counseling, or participation by Black-Vannoy in the Remediation Process whatsoever."

---

[5]Reid produced emails Nylander sent to her entire department telling all of the teachers that they were not to talk to or ask questions of Hehl without first going through Nylander.

[6]Following the February evaluation, Reid prepared a written objection to that evaluation, included in the record, wherein Reid stated, "In November 2009[,] Donna Nylander, for no apparent reason, completely changed our job assignments, suggesting that -she was poor at planning our job assignments in the Fall, or -she was 'giving me four times more work to do.' *** I was now assigned to do half of the evaluations, instead of a chosen few. *** This was done to give me more work to do as she had promised."

¶ 24 Lisa Griffin, an occupational therapist, and Diane Butler, a special education teacher, briefly testified at the hearing as members of the "Student Assessment Team." Both said Reid "could have provided more input into student assessments."

¶ 25 In the "Discussion and Findings" section of his written decision, the hearing officer noted that Reid worked as a school psychologist for the District for 10 years until her dismissal on July 6, 2010. The hearing officer found the evidence established Reid worked at the District's Independence School from 2002 until the end of the 2004-05 school year and, during those years, consistently received excellent evaluations in all categories. After Reid was reassigned to Valley View at the start of the 2005-06 school year, where Nylander was the principal, Nylander prepared Reid's first evaluation in November 2006 and also gave Reid excellent ratings in all categories.

¶ 26 Nylander did not prepare another evaluation of Reid until March of 2009, when Nylander rated Reid as unsatisfactory in four categories. The hearing officer found that Nylander criticized Reid in the areas of student assessment, communication and organizational skills, and student post-assessment debriefing participation.[7]

¶ 27 The hearing officer found Reid presented "extensive documentary and testimonial evidence rebutting the evidence presented by the District."[8] After reviewing the evidence, the hearing officer, in his written decision, concluded:

"I cannot find that the [District] has met its burden of proof to show that [Reid] was unsatisfactory and deserved to be terminated. The evidence does not show that [Reid] was provided with a fair opportunity to rededicate her alleged deficiencies. Nylander's testimony at the Hearing consisted of her reports regarding the observations of [Reid]. Nylander provided little independent recollection of [Reid's] behavior during the Remediation Process. Further, while Nylander provided the overwhelming majority of evidence on the side of the [District], Dr. Hehl, a trained psychologist, provided very little substantive testimony. I note that the consulting teacher, who is required by the Illinois School Code to be an integral part of the Remediation Process, was absent from the Hearing and was not a participant in the Remediation Process. Finally, Nylander's glowing letter of recommendation was inconsistent with her view that [Reid] could not function properly as a School Psychologist. It is inappropriate for an employer of any kind to recommend a less than adequate employee to a potential employer as a means of ridding itself of that employee. I note the burden of proof in this case is on the [District] to prove [Reid] was an unsatisfactory School Psychologist. Based on the totality of the

---

[7]In this evaluation, the record shows Nylander rated Reid as satisfactory in the area of "Professional Growth."

[8]The documentary evidence consisted of Nylander's notes of observations and evaluations, a few notes from Hehl's observations, and Reid's very detailed, written comments and responses to Nylander's notes and evaluations of Reid (similar to an answer to a complaint in court), wherein Reid explained changes in job assignments by Nylander in 2009; attached emails from Nylander and other teachers showing confusion over job assignments, meetings, and Nylander ordering teachers not to talk to Dr. Hehl about issues; and other similar extrinsic evidence supporting Reid's position.

circumstances, I cannot find that the [District] has met its burden of proof to show that [Reid] was provided with an adequate opportunity to be evaluated or to undergo a fair and impartial Remediation Process."

¶ 28   The hearing officer cited the role of the consulting teacher as specified in section 24A-5 of the School Code. 105 ILCS 5/24A-5 (West 2008). The hearing officer expressed his concern that there was no evidence in the record documenting that the qualifications of the consulting teacher met the requirements of the statute, or the consulting teacher actively participated in the remediation process in any fashion.

¶ 29   In conclusion, the hearing officer's order "sustained" Reid's claim that the District failed to prove Reid did not satisfactorily complete the remediation plan before her termination. Therefore, the hearing officer overturned Reid's dismissal and ordered the District to reinstate Reid with full back pay.

¶ 30   Consequently, on August 16, 2011, the District filed a "Complaint for Administrative Review" in the circuit court, pursuant to the Administrative Review Law of the Code of Civil Procedure (735 ILCS 5/3-101 *et seq.* (West 2010)), naming ISBE, the hearing officer, and Reid as defendants, and raised various contentions of error in the ISBE administrative hearing. The Attorney General's office filed an appearance on behalf of both the hearing officer and ISBE and, pursuant to section 3-108(b) (735 ILCS 5/3-108(b) (West 2010)), filed a certified copy of the record of the administrative proceedings over which the hearing officer presided.[9]

¶ 31   On April 9, 2013, the circuit court found the hearing officer's decision was not against the manifest weight of the evidence. Accordingly, the trial judge affirmed the decision of the hearing officer for ISBE.

¶ 32   The District filed a timely appeal with this court.

¶ 33                                    ANALYSIS

¶ 34   First, the District contends that reversal of the hearing officer's decision is required due to various procedural errors. Next, the District claims the hearing officer's findings were against the manifest weight of the evidence, in part, because he failed to give any weight to Reid's negative evaluations, prepared by Nylander, during the remediation plan period.

¶ 35   Reid contends the purported procedural errors were technical, at best, and the hearing officer's findings of fact were properly supported by the record and its documentary evidence. The Attorney General filed a brief on behalf of the hearing officer and ISBE (collectively ISBE) addressing only the procedural issues raised in the District's appellate brief and asserting any technical defects in the administrative hearing did not warrant reversal.

---

[9]ISBE's certified copy of the administrative hearing record filed with the circuit court, as part of its answer, consisted of 616 pages of documents and evidence.

¶ 36                                  I. Standards of Review

¶ 37        When reviewing administrative cases, this court reviews the decision of the
administrative agency and not the circuit court decision. *Marconi v. Chicago Heights Police
Pension Board*, 225 Ill. 2d 497, 531 (2006). To determine the applicable standard of review
of an administrative decision, the court must consider whether the question presented is one
of fact, one of law, or a mixed question of fact and law. *Id.* at 532. Rulings on questions of
fact will be reversed only if against the manifest weight of the evidence; questions of law are
reviewed *de novo*; and a mixed question of law and fact is reviewed under the clearly
erroneous standard. *Id.*

¶ 38                                  II. Procedural Errors
¶ 39                                  A. Court Reporter
¶ 40        First, the District argues that the failure to have a court reporter at the hearing
automatically requires reversal and a new hearing. Whether a party's due process rights were
violated during the administrative hearing is a question of law this court reviews *de novo*.
*Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231, ¶ 21; *Marconi*,
225 Ill. 2d at 532.

¶ 41        The record on appeal includes an affidavit the hearing officer submitted to the circuit
court, without objection, indicating neither party arranged to have a court reporter present
for the hearing. Rather than delay the hearing, according to the affidavit, both parties agreed
to proceed with the hearing without a court reporter present knowing the hearing officer
would record the hearing.

¶ 42        When seeking review in the circuit court, neither party objected to the hearing officer's
affidavit. In addition, neither party criticized the hearing officer's summary of the testimonial
evidence, contained in the 22-page order, as incomplete or inaccurate. Finally, when before
the circuit court, neither party requested leave to supplement the hearing officer's recitation
of the facts with an agreed statement of facts or bystander's report.

¶ 43        Counsel for the District asserted, during oral argument before this court, that the lack of
a transcribed record prevented him from measuring the accuracy of the hearing officer's
recitation of the testimony set out in the hearing officer's written order. This argument is not
persuasive and even the District's counsel, an officer of the court, does not suggest any party
has contested the accuracy of the hearing officer's recitation of the testimony of each witness.
Moreover, the hearing officer indicated that, during Nylander's testimony, Nylander had little
independent recollection and basically recounted the details set out in her written notes and
evaluations, which are also a part of this record and available for our review.

¶ 44        Reid and ISBE allege the District forfeited its right to argue the issue regarding the lack
of a transcript before this court. See *Buckner*, 2013 IL App (3d) 120231, ¶ 22. While
forfeiture may apply, we consider this issue more akin to one of invited error. In another
administrative hearing case, our supreme court held "[t]he rule of invited error or
acquiescence is a form of procedural default also described as estoppel." *Gaffney v. Board
of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 33; *In re Detention of
Swope*, 213 Ill. 2d 210, 217 (2004). Thus, the rule prohibits a party from acquiescing to

proceed in one manner and then contending on appeal that the requested action was error. *Id.* Based on existing case law, we conclude the absence of a stenographer does not entitle the District to a new hearing before the hearing officer under the circumstances presented to this court in the case at bar.

¶ 45                                    B. Findings of Fact

¶ 46    Next, the District claims the hearing officer failed to include findings of fact in his decision. The Illinois Administrative Procedure Act provides, "A final decision shall include findings of fact and conclusions of law, separately stated." 5 ILCS 100/10-50 (West 2010). Although there is no specific template as to how these findings must be laid out in the order, our supreme court has explained that "a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision." *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 103 (1975).

¶ 47    Our careful review of the hearing officer's 22-page order reveals that pages 15 through 21 of the hearing officer's decision fall under the heading "Discussion and Findings." In this section, the hearing officer carefully detailed the facts he found were established by credible testimony or documentary evidence and were relevant to his resolution of the issues. Thereafter, the hearing officer carefully stated his conclusions based on those facts in that portion of his order. Thus, we conclude the hearing officer's decision adequately provided his findings of the facts in a fashion sufficient for judicial review.

¶ 48                        C. Evidence Regarding Consulting Teacher

¶ 49    The District contends, based on section 24A-5 of the School Code, that the hearing officer erred by requiring the District to present testimony from Reid's appointed consulting teacher, Black-Vannoy. Section 24A-5(j) provides, in part:

> "Districts and teachers subject to dismissal hearings are precluded from compelling the testimony of consulting teachers at such hearings under Section 24-12 or 34-85, either as to the rating process or for opinions of performances by teachers under remediation." 105 ILCS 5/24A-5(j) (West 2008).

We note, the hearing officer did not *compel* either party to present the testimony of the consulting teacher.

¶ 50    Although noting that the consulting teacher did not voluntarily appear before the hearing officer to testify on behalf of either party, the hearing officer was obviously more troubled by the fact that there was *no evidence* in the record documenting the consulting teacher's qualifications or her level of participation, if any, in the remediation process. The hearing officer was justifiably concerned that, after expressing a desire to force Reid to voluntarily resign sometime before drafting the May 16, 2009, letter of recommendation, Nylander became Reid's primary observer and solely conducted each one of the formal evaluations documenting Reid's continued and growing number of deficiencies as a school psychologist.

¶ 51    Similarly, we are also concerned that this record does not contain any negative observations of Reid's performance by the consulting teacher. In addition, there is nothing

in this record to suggest Reid failed to comply with and implement any constructive advice the consulting teacher may have suggested to Reid during intensive remediation.

¶ 52       Further, the statute clearly dictates the role and qualifications of a consulting teacher. Subsection (g), in part, provides the qualifications required of a consulting teacher, as follows:

> "[A] consulting teacher is an educational employee as defined in the Educational Labor Relations Act, has at least 5 years' teaching experience and a reasonable familiarity with the assignment of the teacher being evaluated, and who received an 'excellent' rating on his or her most recent evaluation." 105 ILCS 5/24A-5(g) (West 2008).

Subsection (h) provides, in part:

> "The consulting teacher shall provide advice to the teacher rated 'unsatisfactory' on how to improve teaching skills and to successfully complete the remediation plan. The consulting teacher shall participate in developing the remediation plan, but the final decision as to the evaluation shall be done solely by the administrator ***." 105 ILCS 5/24A-5(h) (West 2008).

The documentation presented to the hearing officer by Reid and Nylander did not indicate the consulting teacher was qualified to serve in this capacity or actively participated in any manner in the remediation process. Since the record does not contain evidence the consulting teacher either shared, corroborated, or attempted to address Nylander's concerns with respect to Reid's performance, or had any involvement with Reid to address Nylander's concerns, we agree the absence of information is significant and was properly considered by the hearing officer. We conclude the hearing officer's observations with respect to the consulting teacher's role were accurate, supported by the record, and did not violate the School Code.

¶ 53                                    D. Burden of Proof

¶ 54       The District claims the hearing officer incorrectly placed the burden of proof on the District at the administrative hearing. During oral argument, counsel for the District stated, with regard to the burden of proof before the hearing officer, as follows, "All we have to do is to show that, by a preponderance of the evidence *** that the tenured employee failed to complete the remediation plan with a satisfactory or better rating which constituted cause for dismissal."

¶ 55       We are aware that our supreme court has held, "[A] plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi*, 225 Ill. 2d at 532-33. In this case, Reid framed the issue for the administrative review hearing in terms of the lack of evidence supporting the District's contention that she failed to complete the remediation with a fairly determined and accurately measured unsatisfactory rating.

¶ 56       Specifically, the hearing officer found, "The evidence presented does not show that [Reid] was provided with a fair opportunity to remediate her alleged deficiencies." In other words, the hearing officer held Reid to her burden of proof to show the District did not have an adequate basis to terminate her because the underlying remediation process was unfair.

¶ 57 Clearly, the hearing officer found Reid's testimony credible regarding Nylander's threat to increase her workload if Reid did not resign. Reid's testimony was corroborated by a copy of Nylander's favorable letter of recommendation for Reid if she voluntarily resigned, and the record reveals Reid's workload did increase based on Nylander's reassignment of duties. Reid's evidence showed that Nylander did make significant reassignments of caseloads, in November 2009, thereby significantly increasing the number of student evaluations to be completed by Reid beyond those originally assigned to her in the past.

¶ 58 Since Nylander acted as both the primary observer of and final evaluator for Reid's performance during remediation, the hearing officer concluded the remediation process was not designed to provide Reid with a fair opportunity to cure her deficiencies and avoid termination through remediation. This finding is supported by the record.

¶ 59 Finally, we focus on the language used by the hearing officer when sustaining Reid's objection to the remediation process. In the conclusion of the hearing officer's decision, the officer wrote, "The [District] has failed to prove that [Reid] failed to satisfactorily complete a Remediation Plan pursuant to Section 24A-5 of the Illinois School Code and therefore her Dismissal is overturned." Based on this language, we determine the hearing officer did not misapply the burden of proof.

¶ 60                                 E. Failure to Render Decision Within 30 Days

¶ 61 The District also claims the hearing officer's failure to render a decision within 30 days of the hearing, as mandated by section 24-12 of the School Code (105 ILCS 5/24-12(d)(7) (West Supp. 2011)), requires us to reverse the order to reinstate Reid with full back pay. The statute at issue provides: "The hearing officer shall, within 30 days from the conclusion of the hearing or closure of the record, whichever is later, make a decision as to whether or not the teacher shall be dismissed pursuant to Article 24A of this Code or report to the school board findings of fact and a recommendation as to whether or not the teacher shall be dismissed for cause and shall give a copy of the decision or findings of fact and recommendation to both the teacher and the school board."

¶ 62 Under the Administrative Review Law, "[t]echnical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her." 735 ILCS 5/3-111(b) (West 2010). Additionally, our supreme court has held that procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992).

¶ 63 It is well established that mandatory and directory provisions of a statute can both be couched in obligatory language, but the difference is whether noncompliance with that obligatory language mandates a result due to noncompliance. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). Thus, the use of the word "shall" is not determinative as to whether the statute is mandatory or directory, but it depends upon the legislative intent of the statute. *Id.* at 54. "Whether a statutory command is mandatory or directory is a question of statutory

construction, which we review *de novo*." *Id.*

¶ 64    Our supreme court, in addressing the mandatory versus directory dichotomy has held:

"[S]tatutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision. [Citation.] In the absence of such intent the statute is directory and no particular consequence flows from noncompliance." *People v. Delvillar*, 235 Ill. 2d 507, 515-16 (2009).

The *Delvillar* court held that a directory reading of a statute may still have consequences, but acknowledges only that no specific consequence is triggered by the failure to comply with the statute. *Id.* at 516 (citing *Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233*, 14 Ill. 2d 40, 43-44 (1958) (a provision in the election statute was directory where the statute did not expressly void ballots cast without statutory affidavits)).

¶ 65    Section 24-12 of the School Code lists several remedies available for violation of this 30-day rule. 105 ILCS 5/24-12 (West 2010). None of the express remedies provide for reversal of the hearing officer's decision issued beyond the 30 days. The statute expressly states, "[ISBE] shall not lose jurisdiction to discharge a teacher if the hearing officer fails to render a decision within the time specified in this Section." *Id.* We note the remedies included in this statute allow for the parties to select a new hearing officer to review the case, after 30 days, and render an expedient decision; or the hearing officer who is delinquent in rendering a decision can be removed from the master list of hearing officers for ISBE. *Id.* Additionally, section 24-12 specifically provides, "If the hearing officer fails to render a decision within 30 days, the State Board of Education shall communicate with the hearing officer to determine the date that the parties can reasonably expect to receive the decision."[10] *Id.* Based on the specific language of the statute, we conclude that this is a directory statute and the hearing officer's decision, issued after the 30-day period, is not invalid.

¶ 66                        F. Failure to Include Appeal Language in Order

¶ 67    Next, as to procedural defects, the District claims the hearing officer's decision should be reversed by this court because, in his written decision, he failed to include language that the decision was a final order subject to administrative review as required by section 10-50(b) of the Administrative Procedure Act (5 ILCS 100/10-50(b) (West 2008)). This is a technical defect that, in this case, did not affect the District's due process rights. We note that the District filed a complaint for administrative review in a timely manner asking the trial court to review the hearing officer's decision, therefore, the hearing officer's failure to include this information in his decision did not affect the District in any negative manner.

_____

[10]This clause of the statute was in effect at the time of the administrative hearing, March of 2011, and is therefore relevant to the case at bar. This provision was removed in an amendment to this section that became effective on June 13, 2011 (Pub. Act 97-8 (eff. June 13, 2011)).

¶ 68                        G. Cumulative Effect of Procedural Errors

¶ 69       As discussed above, we agree this record documents various procedural errors. First, the hearing officer accepted the parties' decision to present evidence to the hearing officer without a stenographer. 105 ILCS 5/24-12 (West 2010). Second, the hearing officer did not indicate the order was a final order subject to administrative review as required by section 10-50(b) of the Administrative Procedure Act (5 ILCS 100/10-50(b) (West 2010)). Third, the hearing officer did not issue a decision within 30 days as required by section 24A-5(d)(7) of the School Code (105 ILCS 5/24A-5(d)(7) (West Supp. 2011)). The District asserts the cumulative effect of the combined procedural defects denied the District a fair hearing.

¶ 70       We have carefully reviewed the cumulative effect of all three errors. First, the absence of a transcribed record, resulting from invited error, created the same disadvantage for each party for purposes of review, but it is not alleged to have affected the outcome or the fairness of the administrative hearing itself. In addition, neither party asserts the hearing officer failed to provide an accurate recitation of the testimonial evidence presented by each side during the administrative hearing. While we would have preferred to have a transcribed record for purposes of review, the District, which acquiesced to this procedure, has not convinced this court that this procedural error resulted in an inaccurate record upon review or an unfair hearing for the District.

¶ 71       The hearing officer's failure to issue the decision within 30 days and the failure to identify the order as final did not negatively impact the outcome of the hearing or negatively affect the District's ability to seek appellate review. We conclude these errors did not materially affect the District's rights or result in a substantial injustice to the District. As previously stated, "Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her." 735 ILCS 5/3-111(b) (West 2010).

¶ 72       Therefore, after considering the cumulative effect of the undisputed procedural errors present in this record, we conclude the combined effect of these errors did not result in a substantial injustice to the District. See *Abrahamson*, 153 Ill. 2d at 92-93. We conclude the District received a fair and impartial hearing in this case and was not denied due process.


¶ 73               III. Was the Decision Against the Manifest Weight of the Evidence?

¶ 74       In the alternative, the District claims that the hearing officer's decision was contrary to the manifest weight of the evidence and should be reversed. The Administrative Review Law provides that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2008). " 'An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' " *Marconi*, 225 Ill. 2d at 534 (quoting *Abrahamson*, 153 Ill. 2d at 88). Furthermore, when examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of an administrative agency, and if the record contains evidence to support the agency's decision,

that decision should be affirmed. *Id.*

¶ 75 In his order, the hearing officer expressed that it was his job, as the hearing officer, to "determine whether the principal properly concluded at the end of the Remediation period that [Reid's] performance was unsatisfactory." The hearing officer heard testimony from Reid and Nylander and considered a "voluminous record" of documentation from each witness.[11] When evaluating the evidence, the hearing officer took into consideration all of Reid's excellent evaluations, prior to being assigned to Nylander's school in 2005, Nylander's first excellent evaluation of Reid in November of 2006, and Nylander's May 2009 letter recommending Reid for future employment as a school psychologist, as well as Nylander's unsatisfactory evaluations of Reid in April 2009, October 2009, December 2009, and the last three negative evaluations Nylander prepared during the remediation period which began January 11, 2010. The hearing officer determined Reid's testimony was credible concerning Nylander's expressed preference for Reid to resign or be subjected to increased workloads and eventual termination. Since Nylander denied this conversation, the officer's findings indicated he did not view Nylander as a credible witness, especially with respect to the timing of and reason for the favorable evaluation Nylander drafted for Reid on May 16, 2009.

¶ 76 Faced with conflicting evidence, it was the officer's function, as the finder of fact, to assess the credibility of the documentary information and the testimony of the witnesses and to determine the appropriate weight to be given the evidence. *Marconi*, 225 Ill. 2d at 540. We are not at liberty to substitute our judgment for that of the hearing officer with respect to credibility or the weight to be given to the evidence presented. Based on a careful review of the record, we conclude that the hearing officer's findings and ultimate decision were not against the manifest weight of the evidence.

¶ 77                                                    CONCLUSION

¶ 78 For the foregoing reasons, we confirm the decision of ISBE, through the hearing officer, reversing the District's decision to terminate Reid and ordering the District to reinstate Reid with full back pay.

¶ 79 Confirmed.

---

[11]The 616-page certified copy of the record of administrative proceedings, filed with the circuit court, consisted mostly of documents tendered by Nylander or Reid.